[No. 18393. Department Two. June 4, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Clara V. Kubel, Appellant,* v. MAE M. PLUMMER, *as Treasurer of Jefferson County, Respondent.*[1]

JUDGMENT (212)—RES JUDICATA—PERSONS CONCLUDED. Where a nonresident defendant, served outside the state, appeared specially to quash the service of process, and this being denied, did not subsequently appear, the judgment is a nullity and not conclusive upon her.

EQUITY (46)—LACHES—LIMITATIONS. Mere lapse of time, short of the statute of limitations, in instituting a suit against a county to enforce payment of warrants, does not amount to laches, precluding recovery, where the county was not induced to alter its position by the delay.

PARTIES (43)—BRINGING IN NEW PARTIES—JURISDICTION TO COMPEL. Where a public fund is involved in a suit to require the payment of county warrants, to which an adverse claim exists, the court, under its inherent and statutory power (Rem. Comp. Stat., § 196) to bring in new parties, should order all parties necessary to a complete determination brought in, even though the county treasurer failed to move for it.

APPEAL (488)—DECISION—REMAND FOR FURTHER ACTION. The supreme court will not direct judgment for plaintiff requiring payment of county warrants, where the county treasurer neglected to bring in the adverse claimants who were necessary to a complete determination of the cause, but will remand with directions to bring them in.

Appeal from a judgment of the superior court for Jefferson county, Ralston, J., entered November 24, 1923, dismissing an application for a writ of mandamus, after a hearing before the court. Reversed.

[1]Reported in 226 Pac. 273.

*Shorett, McLaren & Shorett* and *Edward R. Taylor*, for appellant.

*A. Henry Packard* and *J. W. A. Nichols,* for respondent.

FULLERTON, J.—In 1894, the county of Jefferson issued two warrants of two hundred and fifty dollars each, payable out of its general fund. The warrants, shortly after their issuance, were for a valuable consideration assigned by their owners to one E. A. Light, who was then a resident of Tacoma. Mr. Light later removed to the state of California and took up his residence with his daughter Clara V. Kubel, the appellant in the present action. Mr. Light died at his daughter's residence on November 5, 1899, and his son Ira D. Light, a resident of Pierce county in this state, was appointed by the superior court of that county administrator of his estate. After his appointment as such administrator, he served a written notice on the treasurer of Jefferson county, claiming the warrants as property of the estate of E. A. Light and demanding that payment be made only to him as the administrator thereof. The warrants were called for payment sometime in April, 1922. Following the call, Mrs. Kubel presented the warrants for payment through a banking house of the city of Seattle. The treasurer refused to pay them until the controversy over their ownership should be determined. Mrs. Kubel then took no action seeking to enforce payment of the warrants, and shortly thereafter Ira D. Light, as administrator of the estate of E. A. Light, instituted a proceeding in the superior court of Jefferson county to enforce their payment to him. In this proceeding he named as parties defendant both the county treasurer and Mrs. Kubel. Personal service of the summons and com-

plaint was made on Mrs. Kubel at her home in Los Angeles county, California.

The county treasurer appeared in the action by a general demurrer. Mrs. Kubel appeared specially by counsel and objected to the jurisdiction of the court over her person. The demurrer and objection were overruled by the court, and the parties given time in which to answer. Neither of them made any further appearance, and on December 5, 1922, the court, after finding that E. A. Light was, at the time of his death, the owner and holder of the warrants, that the plaintiff in the action, as the administrator of his estate, was entitled to their possession and payment, and that the warrants were wrongfully withheld from his possession by the defendant Kubel, entered a judgment directing the county treasurer to pay the amount of the warrants to the plaintiff, on his executing a bond to the county treasurer in the sum of $2,500, to be approved by the court, "conditioned to hold harmless the county treasurer." The bond was subsequently executed, was approved by the court, and in June, 1923, the amount called for by the warrants paid over to the administrator.

In August, 1923, Mrs. Kubel again presented the warrants to the county treasurer for payment, and payment was again refused. Mrs. Kubel then began mandamus proceedings against the county treasurer to compel payment. The county treasurer answered, putting in issue the allegations of ownership of the warrants made by Mrs. Kubel in her petition for the writ, and setting up as affirmative defenses the claim of the administrator, the judgment entered in the prior proceedings, and a plea of laches. The trial court dismissed the application, resting its judgment on the ground of laches. From this judgment, Mrs. Kubel appeals.

The trial court refused to hold, we think correctly, that the earlier judgment was *res judicata* of the appellant's right. Her appearance in that proceeding was special, and was, in substance, a motion to quash the service or process upon her, and she did not subsequently submit herself to the jurisdiction of the court. As to her, therefore, the judgment is a nullity, and can in no manner operate as an estoppel against her.

Nor do we see any substantial reason for holding the appellant guilty of laches. The proceeding was instituted well within the statute of limitations, and no special circumstances are shown which render its prosecution inequitable. The doctrine of laches is grounded upon estoppel. *Conaway v. Co-Operative Homebuilders,* 65 Wash. 39, 117 Pac. 716. And where we have, as in this state, a general statute of limitations, the doctrine of laches is not applied *sua sponte. Gray v. Reeves,* 69 Wash. 374, 125 Pac. 162.

"Laches is a doctrine of equity. It does not arise from mere lapse of time alone, but arises upon lapse of time together with some intervening change in the condition or relation of the parties adversely affecting the rights of the party sought to be charged. To constitute laches not only must there have been delay in the assertion of the claim, but some change of condition must have occurred which would make it inequitable to enforce the claim." *Lindblom v. Johnston,* 92 Wash. 171, 158 Pac. 972.

Here, there is nothing shown to bar the proceeding except mere lapse of time. If the county has been induced to alter its position, it has not been because of the delay of the appellant in enforcing her claim, nor has it been because of any other act of hers. She cannot, therefore, be charged with having caused the change of position.

It is plain from the foregoing considerations that

the judgment entered by the trial court cannot rest on the ground upon which it placed it. ˙Nor do we see any other valid ground on which a judgment conclusive of the controversy can rest. But we cannot agree with the appellant's contention that these considerations require us to direct a judgment in favor of the appellant. The difficulty with the case is that all of the parties necessary to a final determination of the controversy are not before the court. It may be that, as between the appellant and the county treasurer, since the appellant held the county warrants of which payment was sought, the county treasurer was the only necessary adverse party. But the county treasurer knew there was an adverse claim to the fund represented by the warrants, and it was her duty, in order that the county might not be called upon to pay the warrants twice, to set up the adverse claim and cause the party making it to be brought into the proceeding. The county treasurer neglected this latter duty, but this does not estop the court from causing the party to be brought in on its own motion. When a complete determination of a controversy cannot be had without the presence of other parties, the court not only has inherent power to cause such other parties to be brought in, but it is a power especially conferred upon it by statute (Rem. Comp. Stat., § 196) [P. C. § 8277]. Ordinarily, perhaps, where purely private interests are involved the court will not exercise this prerogative, but will try the issues as the parties frame them, be the subsequent consequences what they may. But the present proceeding involves more than a private interest. It involves a public fund, and a determination of the controversy as the issues are now framed may cause a loss to the fund. In such instances the courts would be derelict in their duties did they not exercise

all of the powers they have for the fund's protection.

The judgment is reversed and the cause remanded with instructions to cause the adverse claimant of the warrants to be brought in the proceedings by summons in the usual manner. If the party claimant appears and joins issue on the appellant's claim, the court will try out and determine the issue on its merits. If he defaults, the court will enter a judgment in favor of the appellant as in other default cases.

MAIN, C. J., BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.