[No. 33542. Department One. August 2, 1956.]

THE AUTOMOBILE CLUB OF WASHINGTON, *Appellant*, v. THE CITY OF SEATTLE *et al.*, *Respondents.*[1]

[1]Reported in 300 P. (2d) 577.

*George E. Roberts*, for appellant.

*A. C. Van Soelen* and *Arthur Schramm*, for respondents.

DONWORTH, C. J.—This action was brought by appellant as a taxpayer against respondents, city of Seattle and its city comptroller and city treasurer, seeking (1) a declaratory judgment to the effect that the transfer of funds from the "city street fund" to the general fund for the purpose of paying a certain death and bodily injury judgment rendered against the city by reason of the negligence of bridge tenders in the operation of the Montlake bridge, was an unconstitutional diversion of state gasoline excise tax funds, being in violation of the eighteenth amendment to the state constitution; and (2) a writ of mandamus compelling respondents to reimburse the "city street fund" from the general fund for any moneys transferred therefrom in reliance upon the provisions of ordinance No. 83598.

The cause was tried to the court without a jury upon stipulated facts and resulted in the court's concluding that the diversion of funds was lawful and proper, and its entering judgment dismissing the action.

The stipulation of facts, after identifying the parties and quoting the eighteenth amendment and certain pertinent statutes, reveals that the accident which gave rise to the judgment against the city of Seattle (hereinafter referred to as respondent) arose out of the raising of the south leaf or span of the Montlake bridge, without any warning, by bridge tenders (employed by respondent) who were, in the course of their employment, testing the operation of the leaf for defects. As a result, the automobile in which the deceased and his wife and child were riding collided with the south span of the bridge.

In part, the stipulation states:

". . . That the Montlake Bridge is a movable span bridge within the city limits of Seattle, *is a part of the city street system of Seattle* and the operation of said span bridge is a 'highway purpose' within the 18th Amendment

to the State Constitution; that the City of Seattle, *acting for and in behalf of the state*, operates and maintains said bridge and employs bridge tenders to operate said movable span bridge and is reimbursed by the state therefor, *all pursuant to a written contract* between the city and the state dated March 27, 1953, . . ." (Italics ours.)

The written contract referred to in the stipulation (a copy of which is attached thereto) is herein called the maintenance agreement. Its execution is authorized by chapter 220, Laws of 1949, p. 734 (RCW 47.24.010). Paragraph II thereof provides as follows:

"The City, acting for and in behalf of the State shall without further instructions perform in a manner satisfactory to the State's District Engineer the following routine maintenance operations on such routes or on designated portions of such routes:

"Routine maintenance on all Primary and Secondary State Highway routes within the corporate limits of the City of Seattle.

"Maintain and operate the movable bridge spans on said highways, namely, The University, Montlake and First Avenue South Bridges."

The maintenance agreement further provides that the city will be reimbursed monthy for all costs incurred under the terms of the agreement, subject to certification thereof by the district engineer of the state highway department, upon submission of vouchers to the department of highways.

We are here concerned with a special fund (herein called the highway fund) which was created by the eighteenth amendment to the state constitution, adopted by the people in 1944. The material portion of the amendment provides as follows:

"All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes. Such highway purposes shall be construed to include the following:

"(a) The necessary operating, engineering and legal ex-

penses connected with the administration of public highways, county roads and city streets;

"(b) The construction, reconstruction, maintenance, repair, and betterment of public highways, county roads, bridges and city streets; including the cost and expense of (1) acquisition of rights-of-way, (2) installing, maintaining and operating traffic signs and signal lights, (3) policing by the state of public highways, (4) *operation of movable span bridges*, (5) operation of ferries which are a part of any public highway, county road, or city street." (Italics ours.)

For the purpose of administering this highway fund, the legislature has vested certain powers in the director of highways. The pertinent statutes relating to the designation of certain city streets as primary or secondary state highways are herein quoted at length:

"*The director shall determine what streets, together with bridges thereon* and wharves necessary for use for ferriage of motor vehicle traffic in connection with such streets, if any, *in any incorporated cities and towns shall form a part of the route of state highways*, and between the first and fifteenth days of April of each year he shall certify to the state auditor and to the clerk of each city or town, by brief description, the streets, together with bridges thereon and wharves, if any, in such city or town which are designated as forming a part of the route of any state highway; *and all such streets, including curbs and gutters and street intersections and such bridges* and wharves, *shall be constructed and maintained by the director* from any state funds available therefor." RCW 47.24.010. (Italics ours.)

"The jurisdiction, control and duty of the state and city and town with respect to such streets shall be as follows:

. . .

"(2) The city and town shall exercise full responsibility for and control over any such street *beyond the curbs*, and if no curb is installed *beyond the portion of the highway used for highway purposes*; . . ." RCW 47.24.020. (Italics ours.)

By the terms of these statutes, the director is given the power to determine what streets within cities and towns, together with bridges thereon, shall be designated as forming a part of the route of any state highway, and, upon his having done so, the state assumes the exclusive right and obligation

to maintain the portion thereof between and including the curbs.

In conformity with the statutes above referred to and the maintenance agreement, the state has employed respondent to maintain and operate the Montlake bridge (under supervision of the department of highways) as a part of the *state highway system.* Respondent has undertaken to perform this function as an agent of the state and is reimbursed by the director of highways for all approved costs therein incurred.

■ Although the portion of the stipulation of facts quoted above recites that the Montlake bridge is a part of the city street system, it is clear from the recitals in the maintenance agreement (which is attached to and made a part of the stipulation) that the bridge is part of the route of a state highway, and that respondent's right or obligation to operate the bridge arises solely by virtue of its employment by the state as an agent of the state. For the purposes of this case, the Montlake bridge must be considered as a part of the state highway system.

The briefs of the parties cite and discuss decisions of other courts of last resort bearing on the meaning of the words "operation expenses" as including payment of tort claims arising in connection with operation of highways, railroads, or other similar businesses. We do not reach this question, however, for reasons hereinafter stated.

Respondent in its brief makes the contention that, since appellant has not demanded that the director of highways take action, pursuant to RCW 47.08.100, to compel the city to make restitution to the city street fund of the money used to pay the tort judgment, the courts will not, in the first instance, undertake to determine whether there has been a wrongful diversion of money through the enactment of ordinance No. 83598.

RCW 47.08.100 gives the director of highways authority to investigate expenditures from the city street fund, and if he determines that unauthorized, illegal, or wrongful expenditures have been made he may proceed as follows:

" . . . if the city street fund is involved he shall notify the city council or commission and the mayor and treasurer of the city or town of his determination. In his determination the director may demand of such officials that the wrongful or illegal expenditures be stopped, adjusted, or remedied and that restitution of any wrongful or illegal diversion or use be made. He may notify such officials that if the wrong is not stopped, remedied, or adjusted, or restitution made to his satisfaction within a specified period fixed by him, he will direct the withholding of further payments to to the county or city from the motor vehicle fund. The county or city shall have ten days after the notice is given within which to correct or remedy the wrong, or wrongful and illegal practices, to make restitution, or to adjust the matter to the satisfaction of the director.

"If no correction, remedy, adjustment, or restitution is made within the ten days to the satisfaction of the director, he may request in writing that the state auditor and the state treasurer withhold further payments from the motor vehicle fund to the county or city; and the state auditor and state treasurer upon being so notified, shall withhold further payments from the motor vehicle fund to the county or city or town involved until notified in writing by the director that payments may be resumed. . . ."

We do not pass upon this contention, because we find it necessary to remand this case to the trial court for the reasons stated below.

It appears to us that in this case we are confronted with an important question (which has not been raised by either party), to wit, may a taxpayer obtain a declaratory judgment declaring whether or not the transfer of funds from the city street fund to pay the tort judgment is an unconstitutional diversion of state gasoline excise tax funds when the director of highways has not been made a party defendant to the action.

Stated in other words, the question is whether the director of highways, who is charged by the legislature with the duty of preventing wrongful or illegal expenditures from the city street fund, is an essential party to this action.

The city street fund was created by RCW 47.24.040, which reads:

"All funds accruing to the credit of incorporated cities and towns in the motor vehicle fund shall be paid monthly to such cities and towns and shall, by the respective cities and towns, be placed in a fund to be designated as 'city street fund' and disbursed as authorized and directed by the legislative authority of the city or town, as agents of the state, for salaries and wages, material, supplies, equipment, purchase or condemnation of right of way, engineering or any other proper highway or street purpose in connection with the construction, alteration, repair, improvement or maintenance of any city street or bridge, or viaduct or underpassage along, upon or across such streets. Such expenditure may be made either independently or in conjunction with any federal, state or any county funds."

Thus, the money in the city street fund is derived from the highway fund, which is the special fund created by the eighteenth amendment to the state constitution, the use of which is limited to highway purposes as defined therein. The amendment was designed to insure that the highway fund would be used exclusively for highway purposes. *State ex rel. Bugge v. Martin,* 38 Wn. (2d) 834, 232 p. (2d) 833.

Since the director was not made a party to this action, we think this case presents a problem analogous to the one before the court in the case of *In re Bridge's Estate,* 40 Wn. (2d) 133, 241 P. (2d) 439. In that case, a residuary legatee was not made a party in a proceeding in which the trial court construed a will and ordered legacies to be paid to certain legatees prior to the date for hearing on the final accounting. This court, on its own motion, reversed the order of the trial court, holding that the order entered would not be *res judicata* as to the residuary legatee, and that permitting the trial court to determine the case on the merits in the absence of the residuary legatee would be a useless act resulting in a multiplicity of suits. See, also, *Toulouse v. New York Life Ins. Co.,* 39 Wn. (2d) 439, 235 P. (2d) 1003, Rule of Pleading, Practice and Procedure 2 (3), 34A Wn. (2d) 69, *State ex rel. Kubel v. Plummer,* 130 Wash. 135, 226 Pac. 273.

■■ We think the principles of the *Bridge* case are applicable here. This court there recognized that a final dis-

position of the case was impossible in the absence of the residuary legatee because every legacy directed to be paid would diminish the residue of the estate *pro tanto*. In the case at bar, the state officer who is charged with the responsibility of conserving the highway fund, which is involved in this action, is not a party and no declaratory judgment as prayed for by appellant could be binding upon him.

The following statutes are pertinent:

"The court may determine any controversy between parties before it when that can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in." RCW 4.08.130.

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." RCW 7.24.060.

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, . . ." RCW 7.24.110.

We think the provisions of the statutes quoted require that the director of highways be made a party to this proceeding. Since he is a necessary party to the adjudication of the issues herein sought to be determined, the case must be remanded. As this court stated, in *State ex rel. Kubel v. Plummer, supra*:

"Ordinarily, perhaps, where purely private interests are involved the court will not exercise this prerogative, but will try the issues as the parties frame them, be the subsequent consequences what they may. But the present proceeding involves more than a private interest. It involves a public fund, and a determination of the controversy as the issues are now framed may cause a loss to the fund. In such instances the courts would be derelict in their duties did they not exercise all of the powers they have for the fund's protection."

The judgment of the trial court dismissing the action is set aside, and the cause remanded with instructions to cause the director of highways of the state of Washington to be

made a party defendant to the action in the usual manner, and for such further proceedings as may be necessary to a complete adjudication of the issues.

The costs of this appeal shall, as between appellant and respondent, abide the final outcome of the new trial.

SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

January 11, 1957. Petitions for rehearing denied.

[1]Reported in 300 P. (2d) 574.