[No. 44014. En Banc. November 4, 1976.]

MINNIE M. WILLIAMS, *Respondent*, v. POULSBO RURAL TELEPHONE ASSOCIATION, *Respondent*, THE BANK OF CALIFORNIA, ET AL, *Appellants*.

*Ausum, Bassett & Gemson,* by *R. L. Gemson* and *Frank R. Morrison, Jr.,* for appellants.

*Williams, Lanza, Kastner & Gibbs,* by *William D. Cameron,* for respondent Williams.

*Perkins, Coie, Stone, Olsen & Williams,* by *Theodore J. Collins,* for respondent Poulsbo Rural Telephone Association.

HUNTER, J.—Until May 7, 1972, when it filed a statement of intent to dissolve, defendant Poulsbo Rural Telephone Association (PRTA) was a Washington corporation operating a telephone utility business. On May 28, 1971, PRTA entered into an agreement with defendant United Telephone Company of the Northwest (Northwest) and Northwest's parent corporation, United Telecommunications, Inc. (United). PRTA agreed to transfer all of its assets to Northwest in exchange for common stock of United. Northwest was to assume all of PRTA's liabilities and obliga-

tions. In conjunction with this reorganization, PRTA adopted a plan of liquidation and dissolution in order to wind up its affairs, cease doing business, and distribute to its shareholders the newly acquired United common stock.

Paragraph 12 of the reorganization agreement is entitled "Employee Benefits" and it relates to the treatment of PRTA employees under the reorganization. Basically, it provides that PRTA employees will be offered continued employment with Northwest after the take-over. It also sets out the employee benefits to which the former PRTA employees will be entitled as Northwest employees, including pension plan seniority credit for years of employment with PRTA. Specifically, paragraph 12 states:

> As employees of a subsidiary of United, the permanent or regular operating personnel of Poulsbo shall be offered positions substantially comparable to those presently held in Poulsbo . . .

> As employees of Northwest, all employees, employed by Poulsbo at the time of Closing on a permanent or regular basis will be eligible for and will be offered certain benefits available to employees of United and its other subsidiaries from time to time. These benefits include:

> (a) United System Employee Retirement Plan (subsequent to the closing date of this Agreement, Poulsbo's existing Profit Sharing Plan and Trust Agreement dated as of January 1, 1966, as amended, with the Bank of California, N.A. as Trustee, will be amended to continue as the United System Employee Retirement Plan and all such permanent or regular employees of Poulsbo will be given credit for pension purposes for the years of service with Poulsbo);

Plaintiff Minnie M. Williams is one of the PRTA employees who accepted the offer set out in paragraph 12 and continued to work for Northwest following the take-over.

The United System Employee Retirement Plan (United Plan), to which paragraph 12 refers, is the retirement pension plan available to employees of United and its participating subsidiaries. The United Plan is administered by a Retirement Benefit Committee, which is appointed by, and serves at the pleasure of, United's board of directors. The

United Plan also gives United the right to terminate the plan for any reason at any time. The United Plan funds the United Telephone System Pension Trust (United Trust) and thus provides a trust fund held for the benefit of all employees covered by the United Plan. The United Trust agreement provides that distributions shall be made by the trustees at the direction of the Retirement Benefit Committee and that the trustees shall be under no liability for distributions made pursuant to committee directions.

The Profit Sharing Plan and Trust Agreement of Poulsbo (Poulsbo Plan), to which paragraph 12 also refers, was set up to provide certain retirement related benefits to PRTA employees. The Poulsbo Plan became effective on January 1, 1966, and the trustee under the agreement is the defendant Bank of California, N.A. (Bank).

The board of directors of PRTA amended the Poulsbo Plan on December 31, 1971, by adding a new section, section 6.06. The obvious purpose of the amendment was the continuation of the Poulsbo Plan, even though PRTA would no longer be doing business, after the acquisition of PRTA by Northwest. Recital E of the December 31, 1971, amendment makes this purpose clear.[1]

In order to accomplish the continuation of the Poulsbo Plan, section 6.06 provides that the rights of participating employees shall vest upon the closing of the reorganization agreement between United, Northwest, and PRTA; that the Poulsbo Plan will continue independently; and that for purposes of the Poulsbo Plan, employment with Northwest will constitute employment with PRTA.[2] This amendment

---

[1] Recital E states:

"It is desired to make it clear that the [Poulsbo] Plan shall continue even though no further contributions are made by the Company [PRTA], and that employees continuing in the employment of United or Northwest are deemed to be in the continued employment of "the Company" for purposes of the Plan, and not entitled to receive benefits under the Plan until retirement from United or Northwest, or death, or total disability or termination of employment with United or Northwest;"

[2] Specifically, the amendment reads as follows:

"6.06 *Vesting and Continuation of Plan upon Sale of Assets.* Not-

was necessary to prevent termination of the Poulsbo Plan due to the reorganization, which resulted in the complete discontinuance of PRTA contributions, the dissolution of PRTA, and the termination of employment with PRTA for all employees. Under sections 6.03, 6.04, and 5.04 of the Poulsbo Plan, the occurrence of any of these situations would otherwise cause the plan to terminate.[3]

The PRTA board of directors adopted section 6.06 pursuant to their reserved power of amendment contained in section 6.01 of the Poulsbo Plan. Among other limitations, section 6.01 states:

> Any such amendment shall become effective upon delivery of a written instrument executed by order of the Board of Directors of the Company, to the Trustee, and the endorsement by the Trustee of its receipt . . .

In the case of section 6.06, the following procedures occurred with regard to its adoption. The PRTA board of directors formally adopted section 6.06 on December 31,

---

withstanding any other provision herein to the contrary, immediately prior to the Closing the rights of all participating employees shall fully vest and become nonforfeitable, and upon the Closing no further contributions shall be made to the Trust Fund by the Company for any period subsequent to the end of 1971, but the Plan, the Trust and the Trust Fund shall otherwise continue in full force and effect, as an independent Plan, Trust and Trust Fund, and employment with Northwest or United shall be deemed employment with the Company for purposes of the Plan, including the provisions of Sections 5.01 (Distribution upon Retirement), 5.03 (Distribution in Event of Total Disability) and 5.04 (Withdrawal from Plan). No distribution shall be made from the Trust Fund to any participating employee or his personal representative until such employee dies or such employee's employment by Northwest or United is terminated."

[3]Section 6.03 provides that "[s]hould [the Poulsbo Plan] be terminated in any manner whatsoever [or should there be a complete *discontinuance of contributions* hereunder], the rights of all participating employees shall fully vest [and become nonforfeitable].

Section 6.04 states that "[i]n the event of the dissolution of the *Company without termination* of the Trust hereby created, the Trustee must terminate this indenture and the Trust hereby created. . . . In such event, the Trust shall terminate and the Trustee shall distribute *assets of the Trust forthwith* among the participating employees."

Section 5.04 provides that "[i]n the event of termination of the employment of a participating employee for any reason other than death, permanent disability or retirement, such terminated employee

1971. Copies of the amendment had been sent to the trustee Bank on the previous day, December 30, 1971, and these were signed by a Bank trust officer and apparently returned to PRTA. Following adoption of the amendment, a copy of section 6.06 was sent to the trustee Bank on January 3, 1972. The presence of the Bank's routine routing stamp on the accompanying cover letter indicates that at least the letter was received. At a later date, however, the Bank requested a copy of the amendment. Formal approval by the Bank's trust department did not occur until December 20, 1972.

On November 14, 1972, the board of directors of United amended the United Plan as of January 1, 1972, by adding "Appendix S." Northwest's board of directors adopted the United Plan as amended by "Appendix S" on November 21, 1972. Northwest also purported to amend the Poulsbo Plan to continue as the United Plan and authorized and directed the Bank to transfer the assets of the Poulsbo Plan to the United Trust. At the request of United and Northwest, and without direction from PRTA, the Bank then transferred the Poulsbo Plan assets of $202,915.49 to the United Trust on February 12, 1973.

In April 1973, plaintiff Williams filed suit both in her individual capacity and as the representative in a class action, representing the class of former PRTA employees who had continued their employment under Northwest. The named defendants were PRTA, Bank, Northwest, and United, but both sides agree that United was never properly served with the summons and complaint and did not appear in the action. The plaintiff sought a declaratory judgment as to her rights under the Poulsbo Plan and the reorganization agreements executed by PRTA, Northwest, and United. She also sought accompanying injunctive relief and a judgment against the Bank for certain administrative fees received from the Poulsbo Plan trust. The suit was never certified as a class action and following plaintiff's motion for summary judgment and defendants' cross-mo-

will receive a vested percentage of his separately allocated share of the [Poulsbo Plan] . . . ."

tion for dismissal, the court entered summary judgment on January 13, 1975.

In its summary judgment the trial court in general upheld the validity of section 6.06 and paragraph 12 of the reorganization agreement, including pension plan seniority credit, thus, for practical purposes, allowing the combination of the Poulsbo Plan and the United Plan. The court, however, placed certain limitations on Appendix S and required that the Poulsbo Plan trust funds be treated as a separate account with interest paid at an annual rate of 7.75 percent. In addition, the judgment awarded costs and attorney's fees to the plaintiff based on the equitable fund doctrine, and in lieu of judgment against the PRTA Plan trust, judgment was entered directly against Northwest based on indemnity.

In their appeal from the summary judgment, defendants Northwest and Bank assign error to the failure to join United and other parties required for the lawsuit, the imposition of an annual interest rate, and the award of costs and attorney's fees. Plaintiff cross-appeals and makes several assignments of error, the most significant of which are the failure to terminate the Poulsbo Plan based on the alleged invalidity of section 6.06 due to the Bank's failure to endorse the amendment pursuant to section 6.01, the resulting combination of the Poulsbo Plan with the United Plan, and the failure to hold the Bank liable for the trustee's fee it paid itself upon the transfer of the Poulsbo Plan trust assets to the United trust.

The defendants, Bank and Northwest, first contend that United, the United Plan beneficiaries, the United Trust trustees, and the Poulsbo Plan beneficiaries are indispensable parties to plaintiff's action. They argue that the failure to join these parties left the trial court without jurisdiction to grant declaratory or equitable relief.

The defendants raise this argument for the first time on appeal. Normally, where an argument has not been presented first to the trial court, we will not consider it on appeal. *See Bellevue School Dist. 405 v. Lee,* 70 Wn.2d 947,

950-51, 425 P.2d 902 (1967); *Gooldy v. Golden Grain Trucking Co.*, 69 Wn.2d 610, 613, 419 P.2d 582 (1966). In this case, however, the failure to include an affected party, *i.e.*, an essential party, in the action for declaratory judgment relates directly to the jurisdiction of the trial court. *See Leonard v. Seattle*, 81 Wn.2d 479, 481, 483, 503 P.2d 741 (1972); *Northwest Greyhound Kennel Ass'n v. State*, 8 Wn. App. 314, 319, 506 P.2d 878 (1973). Arguments relating to the jurisdiction of the trial court will be considered for the first time on appeal. *See State ex rel. Gunning v. Odell*, 58 Wn.2d 275, 277, 362 P.2d 254 (1961), *modified on other grounds, State ex rel. Gunning v. Odell*, 60 Wn.2d 895, 371 P.2d 632 (1962); *State v. Davis*, 41 Wn.2d 535, 538, 250 P.2d 548 (1952); ROA I-43.

For the reasons discussed below, we agree that both United and the other Poulsbo Plan beneficiaries should have been joined and therefore remand this case for further proceedings.

■ The Uniform Declaratory Judgments Act, RCW 7.24, gives courts the power to render declaratory judgments. *See* RCW 7.24.010. It further provides that

When declaratory relief is sought, *all persons shall be made parties who have or claim any interest which would be affected by the declaration*, and no declaration shall prejudice the rights of persons not parties to the proceeding.

(Italics ours.) RCW 7.24.110. Where parties whose rights would be affected and whose interests would be prejudiced are not joined, a declaratory judgment cannot be entered and the case must be either dismissed or remanded. *See Automobile Club v. Seattle*, 49 Wn.2d 262, 269-70, 300 P.2d 577 (1956) (remand for joinder and further proceedings); *In re Estate of Bridge*, 40 Wn.2d 133, 135-36, 241 P.2d 439 (1952) (dismissal without prejudice unless joinder for new trial within 30 days); *Blodgett v. Orton*, 14 Wn.2d 270, 273, 127 P.2d 671 (1942) (affirmed trial court dismissal); *State v. Fruitland Irrigation Dist.*, 196 Wash. 11, 13, 81 P.2d 844 (1938) (reversed judgment with remand for dismissal); *cf.*

*Toulouse v. New York Life Ins. Co.*, 39 Wn.2d 439, 441, 235 P.2d 1003 (1951) (remand for joinder if possible and dismissal without prejudice otherwise).

The arguments of defendants also raise the related matter of indispensable parties.

> When a complete determination of a controversy cannot be had without the presence of other parties, a mandatory duty is imposed upon the court to bring them in. If a complete determination can be had without the presence of other parties, then the right to bring them in is addressed to the sound discretion of the court.

*State ex rel. Continental Cas. Co. v. Superior Court*, 33 Wn.2d 839, 842, 207 P.2d 707 (1949). *Accord, Mayo v. Jones*, 8 Wn. App. 140, 146-47, 505 P.2d 157 (1972); *see In re Estate of Bridge, supra* at 135; *Toulouse v. New York Life Ins. Co., supra* at 440-41. These principles are embodied in CR 19, 20, and 21. *See* RCW 4.08.130; Comment, CR 19 and 20. These rules are designed to guarantee that the interests of an absentee party will be adequately protected. *See In re Estate of Bridge, supra; Mayo v. Jones, supra* at 147; CR 19(b); *cf. Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 19 L. Ed. 2d 936, 88 S. Ct. 733 (1967). *See also* Fink, *Indispensable Parties and the Proposed Amendment to Federal Rule 19*, 74 Yale L.J. 403, 404-08 & n.13 (1965). This is also the main purpose of RCW 7.24.110 of the Uniform Declaratory Judgments Act which requires joinder of all persons whose interests would be affected by the declaration. *See In re Estate of Bridge, supra; State v. Fruitland Irrigation Dist., supra.*

In addition, the scope of relief a trial court may grant is limited to some extent by the parties who are before it. A judgment entered against a nonjoined party is not binding. *See Glandon v. Searle*, 68 Wn.2d 199, 202-03, 412 P.2d 116 (1966); *In re Estate of Krueger*, 11 Wn.2d 329, 342, 119 P.2d 312 (1941). Consequently, a complete determination of a controversy cannot be obtained if it is necessary to include a nonjoined party in the judgment granting relief.

With these principles in mind, we consider whether the nonjoined parties in the present case possess interests that

would be affected or prejudiced by plaintiff's requested declaratory judgment as to her pension rights under the Poulsbo Plan and the United Plan. To the extent her requested relief requires the judgment to include nonjoined parties, a declaratory judgment cannot be granted.

First, it does not appear that the other beneficiaries of the United Plan are indispensable to a determination of plaintiff's rights under the Poulsbo and United Plans, including paragraph 12, section 6.06, and Appendix S. Plaintiff seeks to determine only *her* rights under those plans. This action for declaratory judgment does not affect the interests of other United Plan beneficiaries and will not prejudice their rights under the United Plan. Their rights are not being determined in this action and, therefore, the failure to join the other United Plan beneficiaries in the lawsuit would not prevent the entry of a declaratory judgment with regard to the rights of the plaintiff under the United Plan.

Second, assuming for the moment that United were a party, it is likewise unnecessary to join the United Plan trustees in order to render plaintiff's requested declaratory judgment. In essence, the United Plan is completely controlled and directed by United through the Retirement Benefit Committee. In this situation, the trustees are not necessary parties if, and as long as, United is a party to the lawsuit. United has the authority to control the actions of both the Retirement Benefit Committee and the trustees, who have no personal interest at stake and can safely follow any judgment. Thus, the interests of the United Plan trustees, and of the Retirement Benefit Committee for that matter, will not be inequitably affected by a declaratory judgment involving plaintiff's rights under the United Plan. *See Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 241-42, 398 P.2d 147, 42 Cal. Rptr. 107 (1965); *Murphy v. R.J. Reynolds Tobacco Co.*, 260 Iowa 422, 430-31, 148 N.W.2d 400 (1967). Consequently, it is not necessary for them to be joined *if* United were a party.

It is otherwise, however, with regard to the nonjoinder of United and the other Poulsbo Plan beneficiaries. The nature of this lawsuit, including the validity of section 6.06, and especially the interrelatedness of the two retirement plans created by paragraph 12 of the reorganization agreement, section 6.06 (if valid), and Appendix S, leads us to conclude that the issues cannot be properly resolved in the absence of United and the other Poulsbo Plan beneficiaries.

The major aspect of plaintiff's requested relief was a determination of her rights in a declaratory judgment under *both* the Poulsbo Plan and the reorganization agreement, particularly paragraph 12. In accord with her theory of the case, she also asked for appropriate injunctive relief to terminate the Poulsbo Plan trust, to distribute the present assets to all beneficiaries, and to guarantee that the assets would not in any way be used to fund her pension rights, including seniority rights under the United Plan, for years worked with PRTA. In addition, plaintiff requested a judgment against the Bank for interest on the Poulsbo Plan trust assets and also for the amount of the administrative fee the Bank paid itself upon the allegedly wrongful transfer of the assets to the United trust.

From the scope of plaintiff's requested relief, it is obvious that in addition to the initial question of the validity and effectiveness of section 6.06, the subject matter of the lawsuit involves the interpretation of both paragraph 12 of the reorganization agreement and section 6.06 of the Poulsbo Plan. The rights of the Poulsbo Plan beneficiaries with regard to both that plan and the United Plan will be affected by a determination on the validity of the amendment and the interpretation of either the reorganization agreement or the amendment. The rights of the plaintiff under either plan cannot be determined without a decision on the validity of section 6.06 and an interpretation of provisions that likewise must define the rights of all the other former employees of PRTA now working for Northwest. *See Peoples Nat'l Bank v. Jarvis*, 58 Wn.2d 627, 631, 364 P.2d 436

(1961); *cf. Bayha v. PUD 1*, 2 Wn.2d 85, 112-13, 97 P.2d 614 (1939).

In a similar fashion, it is clear that United will be affected by any interpretation of the two retirement plans. As discussed earlier, United effectively controls the United Plan and any judgment involving rights under that plan must necessarily affect interests and obligations of United. In addition, United is inextricably involved in all three items before the trial court for interpretation. Its interests in the disposition and coordination of the two different retirement plans as contemplated by the reorganization agreements are affected by the relief requested by the plaintiff.

As a consequence of the nature of this lawsuit and the interests of both United and the other Poulsbo Plan beneficiaries, it was improper to proceed without the presence of those parties. In order to render a declaratory judgment, as heretofore stated, "all persons shall be made parties who have or claim any interest which would be affected by the declaration . . ." RCW 7.24.110. Both United and the other Poulsbo Plan beneficiaries are such parties and therefore they should have been joined. In addition they should have been joined since in their absence a complete disposition of the controversy would not be possible. *See* CR 19. In light of our holding on this issue, we expressly note that we have not passed on the question of whether or not the adoption of section 6.06 was a valid and effective amendment of the Poulsbo Plan.

The plaintiff argues that both United and the other Poulsbo Plan beneficiaries need not be joined. With regard to United, the plaintiff characterizes its involvement as no more than that of a joint tort-feasor in the allegedly wrongful transfer of the Poulsbo Plan trust funds. This is at odds with plaintiff's requested relief which clearly does require the presence of United as a party.

The plaintiff raises numerous arguments as to why the joinder of the other Poulsbo Plan beneficiaries is not necessary. We do not find them persuasive. Most relate to

exceptions to the general rule that all beneficiaries must be joined in an action by a beneficiary against a trustee. These exceptions, such as a suit for removal of the trustees, do not apply in the present case because the nature of the requested relief would require both a determination as to the validity of the Poulsbo Plan trust agreement itself, specifically section 6.06, and construction of that section. Any result would necessarily affect the interests of all beneficiaries. Besides, even the exceptions listed by plaintiff generally require all beneficiaries be joined as parties in a lawsuit by a beneficiary against a trustee, especially if the action will require an accounting. *See Trust beneficiaries as necessary parties to action relating to trust or its property*, Annot., 9 A.L.R.2d 10 (1950). Likewise, the doctrine of virtual representation is not applicable to allow plaintiff to sue individually because the absent beneficiaries do not necessarily have a common interest with the plaintiff. We have considered plaintiff's remaining arguments and also find them unpersuasive.

In oral argument counsel for plaintiff raised the additional contention that joinder of the beneficiaries is not required based on section 8.05 of the Poulsbo Plan. Section 8.05 states generally that the plan beneficiaries shall not be considered parties necessary to lawsuits involving the Poulsbo Plan trust. We need not decide, however, if an interpretation of that provision warrants the conclusion that the beneficiaries need not be joined in such lawsuits because the present case involves more than just the Poulsbo Plan trust. The Poulsbo Plan beneficiaries' retirement rights, based on employment with Northwest, are affected by both paragraph 12 and the Poulsbo Plan. Their rights are based on the interrelatedness of both the United and the Poulsbo Plans and those rights will be affected by the interpretation and construction of both paragraph 12 and section 6.06. Consequently, their presence in the present action as joined parties is required in order for the trial court to render a declaratory judgment.

■ Because the argument that United and the other Poulsbo Plan beneficiaries are required parties was first raised on appeal, we feel that it would be inappropriate to dismiss the case without first giving the plaintiff the opportunity to join all the parties essential to this declaratory judgment action. *See Automobile Club v. Seattle*, 49 Wn.2d 262, 267, 269-70, 300 P.2d 577 (1956); *In re Estate of Bridge, supra; Toulouse v. New York Life Ins. Co.*, 39 Wn.2d 439, 441, 235 P.2d 1003 (1951). We therefore remand this case to the trial court with instructions to dismiss without prejudice unless United and the Poulsbo Plan beneficiaries are joined as parties consistent with this opinion within 90 days.

Costs will abide the final determination of the cause.

STAFFORD, C.J., and ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.