[No. 2415–3. Division Three. March 21, 1978.]

RAY MARTIRE, ET AL, *Respondents,* v. LLOYD J. BORJESSAN, ET AL, *Appellants.*

*Lloyd A. Herman* and *McKanna, Herman & Toreson,* for appellants.

*Dennis W. Clayton* and *Felice & Felice,* for respondents.

GREEN, J.—This is a declaratory judgment action commenced to determine whether a lease had expired or had been properly renewed and to declare the parties' respective rights under it. From a judgment determining that the lease was terminated, the lessees Borjessan appeal.

They contend the judgment should be reversed for two reasons: (1) The court did not have jurisdiction to proceed because indispensable parties were not joined in the action; and (2) Declaratory relief was not the proper remedy. We affirm.

The record on appeal consists only of the clerk's papers and the written lease. This limited record indicates that in May 1961, the Borjessans leased certain premises in the city of Spokane from the Martires for a term of 15 years, beginning July 1, 1961. The lease contained an option to renew for an additional 10–year period upon the same terms and conditions, except rental. The option was to be exercised "by serving written notice of renewal upon the lessor at least ninety (90) days before the expiration of the original term."

Under the lease, the Borjessans agreed to remove all existing improvements and construct a modern automatic laundry and dry cleaning building and parking facility at their own expense. Title to these improvements was reserved to the Borjessans during the term of the lease, but upon termination, title was to be conveyed to Martires. Borjessans constructed the building and then sublet the premises to B.J.T.M. Enterprises, Inc., who either sublet or assigned their sublease to Clark Kelsey, the present tenant in possession.

When the term of the primary lease expired, a dispute arose between Martires and Borjessans over whether the option to renew had been exercised. This action was then commenced. Neither B.J.T.M. Enterprises nor Mr. Kelsey was joined as parties. Borjessans demanded a jury trial. The court's memorandum opinion and briefs on appeal reveal that the parties agreed that the only issue to be submitted to the jury was whether Borjessans served a written notice of renewal upon the Martires within 90 days prior to the expiration of the lease. The jury answered in the negative. Based upon this verdict and the terms of the written lease, the court declared the lease to be terminated.

Counsel for Borjessans then moved the trial court for reconsideration and new trial, contending for the first time that the court did not have jurisdiction because the sublessees were indispensable parties and were not joined in the action. The memorandum opinion indicates that Mr. Kelsey was in possession of the premises at the time, was fully aware of this proceeding, and in fact testified as a witness. However, it does not appear that he ever sought to become a party to this action. Borjessans' motion for a new trial was denied.

First, Borjessans claim that the court was without jurisdiction to proceed for failure to join indispensable parties. They rely upon *Williams v. Poulsbo Rural Tel. Ass'n*, 87 Wn.2d 636, 555 P.2d 1173 (1976), and the cases cited therein. This case is not controlling in the circumstances

here because we do not find the sublessees to be indispensable parties.

Neither of the sublessees were parties to or named in the original lease. Assuming Martires gave the required consent to sublease, the lease provides that no sublease "shall . . . relieve or release the lessee from liability for the payment or performance of any of the terms . . . of this lease to be performed on the part of the lessee." It is clear that the obligation to properly exercise the option to renew rested upon Borjessans—not upon the sublessees. Whether Borjessans performed that obligation is a matter to be determined between the parties to the primary lease and does not involve the sublessees. The effect of a determination of the renewal issue upon the sublessees is collateral. There is nothing in the record indicating any direct contractual relationship between the sublessees and the Martires.

CR 19(a) provides for a joinder of persons needed for just adjudication. It states that a party *shall* be joined if:

> (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The sublessees in this case do not fall within any of the categories covered by this rule. The court's ability to render complete relief between the Martires and the Borjessans is not affected by the absence of the sublessees. Neither are the sublessees so situated that disposition of the issue between the Martires and the Borjessans would impede the sublessees' ability to protect their interest or subject either the Martires or Borjessans to a substantial risk of incurring inconsistent obligations. Whether the sublessees have rights against Borjessans or between themselves is not involved in the determination of the renewal issue.

Further, the declaratory judgments statute, RCW 7.24-.110, does not mandate joinder of the sublessees:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

This section contemplates a direct, rather than a collateral, interest in the issue litigated. For the foregoing reasons, the sublessees were not indispensable parties and the court had jurisdiction to proceed.

■ Second, we disagree with Borjessans' contention, which was never presented to the trial court, that the action could not properly be brought under the Uniform Declaratory Judgments Act, RCW 7.24. The standard against which we measure Borjessans' contention was outlined in *Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 814–15, 514 P.2d 137 (1937):

> This court, in applying the Uniform Declaratory Judgments Act, RCW 7.24, has, in the absence of the intrusion of issues of broad overriding public import, steadfastly adhered to the virtually universal rule that, before the jurisdiction of a court may be invoked under the act, there must be a justiciable controversy: (1) which is an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive. . . . These elements must coalesce, otherwise the court steps into the prohibited area of advisory opinions.

(Footnote omitted. Citations omitted.) Here, it is evident that a justiciable controversy exists and all of the requirements outlined in *Diversified Industries* have been met. The authorities relied upon by Borjessans are distinguishable since they involve breaches of contract more properly resolved in a common–law action.

Third, Borjessans contend that the declaratory judgment proceeding precluded the court from considering equitable issues, *e.g.,* the expenses incurred in construction of the improvements insofar as equitable considerations would bear upon the issue of renewal. The difficulty with the Borjessans' present contention, aside from the fact it was not presented to the trial court, lies in their failure to produce evidence concerning these matters despite the numerous requests by the trial judge. Rather, they consistently rejected the court's invitations to produce such evidence and stood upon their claim that the court was without jurisdiction to hear these matters. In our view, the court was not precluded from hearing such evidence.

RCW 7.24.020 provides:

> A person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the instrument . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder.

Accordingly, Borjessans could have presented evidence of the costs incurred in constructing the building as well as evidence of their intent to exercise the option, in spite of the finding that they failed to exercise it in the manner prescribed in the lease. This was precisely what the trial judge requested of the Borjessans. Having declined, they cannot now urge this court to reverse to allow them to do that which they refused to do in the first instance.

Finally, it is contended that since the question of written notice was presented to the jury, the court's act of entering written findings of fact was error. We find no error. The findings entered are consistent with the jury's verdict, and no error is assigned to the content of any specific findings. Even if the entry of findings was procedurally improper, the error is harmless.

Affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.