[No. 30257. Department Two. February 13, 1948.]

C. N. CHAPIN *et al., as Trustees, Appellants,* v. NANZIE
BROWN COLLARD, *Respondent.*[1]

[1]Reported in 189 P. (2d) 642.

*Jones & Bronson* and *Wheeler Grey,* for appellants.

*James M. Ballard,* for respondent.

ROBINSON, J.—W. G. Norris died December 4, 1940. By the first four paragraphs of his will, he made certain specific bequests; and by the fifth paragraph, he bequeathed and devised to his wife, Ina E. Norris, and to H. B. Jones and C. N. Chapin, and to the survivors or survivor of them, as trustees, all the residue of his estate, to be

". . . held, managed, disposed of and applied in trust for the uses and purposes hereinafter set out:

"(1) After the payment of the necessary expenses of administration of this trust, I hereby direct my trustees to pay to my wife, INA E. NORRIS, provided she shall survive me, the entire net income from said trust during her life.

"(2) If my wife shall not survive me, or if she shall survive, then upon her death, I direct my said trustees to

pay the entire net income from said trust to my niece, NANZIE BROWN COLLARD, during her life."

This concluded the statement of the uses and purposes of the trust.

By the sixth paragraph, he provided that, on the death of both of the two named beneficiaries of the trust, his estate should be distributed to Ina C. Clemens, the niece of his wife, or, in the event of her death, to her then living child or children.

The seventh paragraph directed that

". . . all inheritance, succession or estate taxes due upon account of my death, or upon my estate, or upon account of any bequests and devises herein made shall be paid out of the principal of my estate."

The eighth, ninth, and tenth paragraphs of the will had reference to the trust, the eighth dealing with the rights and interests of the beneficiaries, and the ninth and tenth with the powers of the trustees.

The eleventh and final paragraph appointed executors (who were identical with the trustees) and set forth their powers.

Included in the assets of the estate which came into the possession of the trustees were six pieces of improved real estate, consisting of two apartment houses, a theater-and-store building, a store building of the supermarket type, a row of wooden garages, and a building used as a machine shop.

The trustees adopted the practice of making deductions from the gross income of the rental properties for the purpose of setting up a depreciation reserve. Mrs. Norris, who was both trustee and beneficiary, died on April 14, 1943; and Nanzie Brown Collard, who then became entitled to the entire net income from the trust, thereafter challenged the right of the trustees to make such deductions. The surviving trustees, the appellants here, brought this action for a declaratory judgment under the provisions of Rem. Rev. Stat. (Sup.), § 784-4 [P.P.C. § 65-7], which, so far as it is pertinent, reads as follows:

"A person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto: . . .

"(2) To direct the executors, administrators or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

"(3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

Their prayer was that they

". . . be authorized and directed to deduct from the gross income . . . an amount equivalent to the reasonable depreciation of the real properties included in said trust, before making distribution of the net income thereof."

Nanzie Brown Collard was the only person made a party to the action, and by her amended answer and cross-complaint, she took the position that the reserve for depreciation was not a proper charge against the income from the rental properties and asked that the amounts theretofore deducted from the gross income for that purpose be paid to her. She also charged that the trustees were awarding themselves excessive ·fees and asked that the court fix reasonable fees for the trustees for the years 1943 and 1944 and that they make an accounting.

It was conceded that the amount of depreciation reserve which had been deducted between April 14, 1943, and December 31, 1946, the period during which Mrs. Collard was entitled to receive the entire net income from the estate, was $14,856.93.

The trial court found that a full accounting had been made, and approved the fees of the trustees, but did three things of which appellants complain: (1) decreed that the withholding by the trustees of $14,856.93 from April 14, 1943, through the year 1946, as a depreciation reserve, was contrary to the terms of the last will and testament of W. G. Norris and without authority of law, and directed them to pay that amount over to Nanzie Brown Collard and not to

make such deductions in the future; (2) gave to Nanzie Brown Collard a judgment in the sum of seven hundred fifty dollars, to apply on expenses incurred for a certified public accountant, and a judgment in the sum of one thousand dollars to apply on her attorney's fees, which sums were to be paid by the trustees "out of the corpus of the W. G. Norris Estate"; and (3) directed the trustees to "charge their costs, Trustees' fees and attorneys' fees in this action to the corpus of the estate."

(The parties and the trial court used the term "corpus" to distinguish the capital assets, which would pass to the remainderman, from the income therefrom, to which the beneficiary or life tenant was entitled. We will use the same terms, but where we refer to the "W. G. Norris trust" or the "trust estate," we will be referring to the entire trust, both corpus and income.)

In *Laflin v. Commissioner of Internal Revenue*, 69 F. (2d) 460, the law is tersely stated:

"It is a rule of general application that the beneficiary of a trust entitled thereunder to receive the income from such property may not be required to suffer a deduction from such income for the creation of a sinking fund to provide for depreciation and obsolescence, unless, indeed, the trust instrument or the law of the state makes provision therefor."

Appellants concede this to be the general rule, but urge that the language of the whole will, and particularly the portion of the ninth paragraph reading:

" . . . and generally in all respects to manage, handle and dispose of each and every part of the trust estate in such securities, properties or investments, either of the character permitted by law for the investment of trust funds or otherwise, and in such manner and upon such terms and conditions as to them may seem best, it being my desire, however, that in making any investments my trustees shall have regard for the safety of the principal of the trust estate, rather than the obtaining of a high rate of interest,"

and the tenth paragraph, which is:

"My trustees, or the survivors or survivor, shall have power to pay all taxes, assessments, governmental charges,

expenses of this trust and all other proper charges against the property held under this trust or arising out of the administration hereof, including reasonable compensation to themselves for the performance of their duties hereunder, for all of which they shall be entitled to be reimbursed out of the income and principal of the trust estate prior to the making of any distribution hereunder,"

together with the use of the words "the entire net income from said trust," manifests an intention on the part of the testator that a reserve for depreciation be established.

This is no more than wishful thinking. The trustees were directed, "after payment of the necessary expenses of this trust," to pay to the named beneficiaries "the entire net income from said trust." There is nothing in the will to evidence any intention that a reserve for depreciation be deducted from that income, and no ambiguity that warrants the admission of extrinsic evidence of such an intention. In the *Laflin* case, *supra,* the court said:

"We find nothing in the trust instrument itself which would authorize the life tenant to set up such a reserve. There is the general authority to pay 'all taxes and special assessments and all water rates and all other public charges of every kind and description whatsoever on all of the property belonging to the trust estate, and also all cost of insurance and all necessary and proper costs, charges and expenses of any and every kind and description whatsoever connected with or growing out of the management of the trust estate or the exercise of any of the powers conferred by this my Will on my said Trustee.'

"But in our judgment this does not even suggest any duty or right to set apart a sinking fund to provide for depreciation."

Under the declaratory judgment act, we may construe the provisions of a will, but we may not supplement it with provisions it does not contain.

Appellants then invite us to say that the rule referred to is outmoded, and to declare that modern business conditions and practice justify the establishment of a rule of law in this state that trustees of a trust including rental property may deduct a depreciation reserve from rental

income which would otherwise be distributed to a life tenant.

In the very recent case (April, 1947) of *In re Roth's Estate,* 52 A. (2d) (N. J.) 811, in the prerogative court of New Jersey, a vice ordinary, answering the request of the remaindermen that a depreciation reserve be created by charging the annual income of a trust estate with a sum equal to a reasonable percentage of the value of the buildings at the testator's death, said:

"Such a course is in harmony with modern accounting practice, but generally, as between life tenant and remaindermen, the latter must bear any loss due to depreciation and obsolescence. Mrs. Sameth cannot be required to suffer a deduction from income for the creation of a sinking fund to offset such a loss. *Laflin v. Commissioner,* 7 Cir., 69 F. 2d 460. A tenant for life is bound to repair only to the extent of preventing permissive or actual waste. *Kearney v. Kearney,* 17 N. J. Eq. 59, and 504. In fulfillment of this duty, it is said that he must keep the premises in as good repair as when his estate began, not excepting ordinary wear or tear. . . . But he is under no obligation in respect to the loss of economic value of a building which normally occurs."

See, also, *Evans v. Ockershausen,* 69 App. D. C. 285, 100 F. (2d) 695, 128 A. L. R. 177; certiorari denied, *Smith v. Ocker[s]hausen,* 306 U. S. 633, 83 L. Ed. 1034, 59 S. Ct. 462.

We find no substantial authority, either "old" or "modern," supporting the position of the appellants, and both the number and the reasoning of the cases which adhere to the rule as stated in the *Laflin* case, *supra,* impel us to decline the invitation to establish a different rule in this state.

■ The courts diligently protect the right of the life tenant to enjoy the full benefits intended for him or her, because, as Mr. Justice Swayze said, in *McCracken v. Gulick,* 92 N. J. Eq. 214, 112 Atl. 317:

"Clearly, when he [the testator] has created a trust fund and directed that the income be paid a beneficiary for life, he intends to secure that income to the life tenant; that is the very object of the fund. . . . , the testator can hardly

mean to starve the life tenant for the benefit of remaindermen, whom he often has never seen."

That statement is particularly appropriate in this case, where the trust terminates on the death of the life tenant.

Upon all matters submitted to the trial court by the pleadings in the declaratory judgment proceeding, the trial court is affirmed.

■ However, we call attention to the fact that the remainderman was not made a party to this proceeding. The first sentence of § 11 of the declaratory judgment act, being Rem. Rev. Stat. (Sup.), § 784-11 [P.P.C. § 65-21], is as follows:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. . . ."

■ We agree with the appellant that the trial court had no authority under Rem. Rev. Stat. (Sup.), § 784-10 [P.P.C. § 65-19], to make any allowance for respondent's accountants' fees, or for attorneys' fees other than statutory attorneys' fees. That section of the declaratory judgment act reads as follows:

"In any proceeding under this act, the court may make such award of costs as may seem equitable and just."

We have repeatedly held that "costs" do not include attorneys' fees (other than statutory) or accountants' fees. In *Fiorito v. Goerig*, 27 Wn. (2d) 615, 179 P. (2d) 316, we said:

"The term 'costs' is synonymous with the term 'expense.' Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word 'costs,' in the absence of statute or agreement, does not include counsel fees; in other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.

"We have consistently followed the general rule concerning allowances of attorneys' fees and other items of expense in preparation of trial, such as accountants' fees, that such allowances will be allowed only in case of agreement between the parties or by virtue of specific authority.

796

*State ex rel. Macri v. Bremerton,* 8 Wn. (2d) 93, 111 P. (2d) 612.

"Where an expert is employed and is acting for one of the parties, it is not proper to charge the allowance of fees for such expert against the losing party as a part of the costs of the action. If the services of an expert are necessary for the proper presentation and determination of the case, such expert or accountant should be appointed by and act under the direction of the court. Where, as in the case at bar, as the employee of one of the parties,

" ' " . . ., the temptation to act in the interest of such party must be apparent. . . . if either party sees proper to employ the services of an expert for his own benefit, the court should not require the opposite party to pay for the services thus rendered." ' *Boothe v. Summit Coal Mining Co.,* 72 Wash. 679, 131 Pac. 252.

"See, also, *Schoenwald v. Diamond K Packing Co.,* 192 Wash. 409, 73 P. (2d) 748, in which we held that the court has no power in an adversary proceeding to assess attorneys' fees in the absence of statute or contract, and that the rule is applicable in equitable as well as in law actions. We further stated that the rule applies with as much or greater force to charges of accountants."

The trial court may have been proceeding on the basis of the rule for which respondent contends, that those who perform services beneficial to a trust estate may be compensated therefrom. The respondent places considerable reliance on *Monroe v. Winn,* 19 Wn. (2d) 462, 142 P. (2d) 1022; but, in speaking of this case in *Tucker v. Brown,* 20 Wn. (2d) 740, 150 P. (2d) 604, we said:

"Special attention is directed to the *Monroe* case by appellant. Its counsel interpret that case as giving approval to the payment of costs of both parties, including the trustee, incurred in litigation between the *cestui* and the trustee. We do not agree with appellant. In that case, we had before us two sets of trustees who performed services for the trust, and it was on the basis of service to the trust fund that this court allowed costs and attorneys' fees."

Without going into the ramifications of the conditions and limitations under which persons other than trustees may be entitled to be compensated from trust funds for their efforts in the creation or preservation of such funds, we

here hold that neither respondent's accountant nor her attorney has rendered such service as would bring him within any rule permitting his fees to be charged against the trust estate. The trustees rendered a full and complete accounting, and the trial court specifically denied the respondent's right to any further accounting. The two questions submitted to the trial court by the pleadings: *i.e.*, (1) Was a depreciation reserve a proper charge against income? and (2) Were the fees of the trustees excessive? did not warrant the employment by respondent of an accountant.

We do not see wherein the services of respondent's accountant were of any value to the trust estate, and the allowance of the cost thereof as a charge against it cannot be justified.

It must be conceded that respondent's attorney has been of assistance in determining the proper procedure of the trustees with reference to the matter of a reserve for depreciation, and his able brief was of material aid to this court in determining that matter. However, his services had to do neither with the creation nor the preservation of the trust fund or estate, but rather with the proper procedure in determining what constitutes the net income therefrom. His services were adversary in character, for the benefit of the life tenant and to the detriment of the remainderman. They added nothing to the trust estate; they benefited no group or class but merely the life tenant who employed him and who, like any other litigant, should compensate him for his services without reimbursement from the W. G. Norris trust.

 Neither do we agree with the trial court that the costs, attorneys' fees, and fees of the trustees in connection with this action should, in this proceeding, be charged against the corpus of the trust estate. The remainderman is, after all, not a party to this proceeding, and, before a court starts reducing her estate, she should have an opportunity to be heard. Since all interested parties were not before the court, we deem that the trustees are first entitled to exercise their discretion as to how these charges should be allocated between income and the corpus of the trust.

If either the life tenant or the remainderman disagrees with the account rendered, she may challenge it in an appropriate proceeding, and the court may, after due notice to all interested parties, determine the propriety of that allocation. We do not here say that the trial judge's allocation was wrong; we merely say that it should not have been made in a proceeding in which the remainderman had no opportunity to be heard.

The judgment of the lower court is affirmed in all respects except that the judgment for fees for respondent's accountant and attorney is eliminated, as is that portion of the judgment reading:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff Trustees be and they are hereby ordered and directed to charge their costs, Trustees' fees and attorneys' fees in this action to the corpus of the estate."

The statutory costs and disbursements provided for by Rem. Supp. 1941, § 1744 [P.P.C. § 5-81], incurred by the respective parties to this appeal, shall be paid by the trustees out of the funds of the W. G. Norris trust in accordance with the rule that when a trustee finds it necessary to seek the direction of a court of equity, all parties whom it is necessary to bring before the court for his protection are entitled to their costs out of the trust funds. 2 Perry on Trusts (7th ed.) 1526, § 903a. The same rule is expressed somewhat differently in 2 Perry on Trusts (7th ed.) 1517, § 899:

"And so all persons whom it is necessary for the trustees to bring before the court as parties, in order to obtain a valid decree to protect them in the discharge of their duties in disposing of the trust fund, will be entitled to their costs."

The trustees' allocation of such costs, if unsatisfactory to either the life tenant or the remainderman, can, of course, be challenged in an appropriate proceeding.

The cause is remanded, with instructions to the trial court to make deletions in the judgment in accordance with the views herein expressed.

MALLERY, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.