[No. 421-2.    Division Two.    February 7, 1973.]

NORTHWEST GREYHOUND KENNEL ASSOCIATION, INC., *Appellant*, v. THE STATE OF WASHINGTON *et al.*, *Respondents.*

*Frederick O. Frohmader,* for appellant.

*Slade Gorton, Attorney General,* and *Charles F. Murphy, Assistant,* for respondents.

PEARSON, C.J.—The Northwest Greyhound Kennel Association brought this action against the State of Washington and the Washington State Horse Racing Commission, seeking a declaratory judgment that the horse racing act, RCW 67.16.010, *et seq.,* is unconstitutional. Specifically, the prayer for relief states:

That said legislative enactment, RCW 67.16.010 through RCW 67.16.900 and any other horse racing statutes and parimutuel statutes be declared unconstitutional and null and void ab initio therein so that plaintiff and all others stand on an equal footing with all other persons and the legislature may take the proper steps therein to enact a new comprehensive set of laws covering gambling, racing and parimutuel systems therein, thereby creating a valid constitutional law under which all may operate equally.

The state contended throughout the proceedings that the trial court did not have jurisdiction to hear the suit under the declaratory judgments act, RCW 7.24.010, *et seq.* Nevertheless, the trial court accepted jurisdiction, ruled against the Kennel Association on the merits, and dismissed the action. We affirm the dismissal, but on jurisdictional grounds.

Appellant, Kennel Association, was organized and incorporated in this state for the purpose of conducting the

business of racing greyhounds in Washington. In December, 1968, the Washington State Horse Racing Commission denied appellant's request for a license to operate a pari-mutuel dog track. Appellant applied to the superior court for mandamus relief, seeking to compel the commission to grant the requested license. In February, 1969, mandamus was denied and no appeal was taken from that decision. Instead, the present action was undertaken, resulting in the judgment upholding the constitutionality of the horse racing act.

■ It is axiomatic that before a trial court assumes jurisdiction and determines a question under the declaratory judgments act, a justiciable controversy must be presented. *Washington Beauty College, Inc. v. Huse,* 195 Wash. 160, 80 P.2d 403 (1938).

It is our view that appellant's complaint itself established two bases for challenging the justiciability of the controversy asserted, and the undisputed evidence presented furnished a third ground for dismissing the action without reaching the merits, also because of the lack of a justiciable controversy.

We cannot say that it was error for the trial court to have denied respondent's pretrial motion to dismiss the action, since the real nature of the issue became more readily ascertainable after the testimony was heard. Accordingly, we have considered the testimony as it bears on each of the three grounds hereafter discussed and conclude that the action should have been dismissed at the conclusion of the evidence for lack of a justiciable controversy.

■ We first consider the modern requirements for a justiciable controversy as enunciated in *State ex rel. O'Connell v. Dubuque,* 68 Wn.2d 553, 558, 413 P.2d 972 (1966).

First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument

evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them. Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.

It is apparent that the rule of justiciability requires that appellant must have a direct, present, substantial and legally protected interest in the relief sought. *Washington Beauty College, Inc. v. Huse, supra.* By the relief sought in its complaint and by the evidence adduced at the trial, it is clear that appellant failed to show that it had such an interest.

We point out initially that both horse racing and dog racing, per se, are not prohibited under existing statutes.[1] The undisputed evidence in the record discloses, however, that neither dog nor horse racing can survive economically without funds made available to the animal owners through the pooling of public wagers placed upon the outcome of the race (pari-mutuel betting).

Historically, such professional betting pools have been illegal in this state since at least 1909. *See State v. Ensminger*, 77 Wn.2d 535, 463 P.2d 612 (1970); RCW 9.47.060, *repealed by* Laws of 1971, 1st Ex. Sess., ch. 280, § 23. This professional gambling prohibition continues under the 1971

---

[1]RCW 67.16.060 provides, in part: "Every race meet held in this state contrary to the provisions of this chapter is hereby declared to be a public nuisance." However, "race meet" is defined in RCW 67.16.010 as "any exhibition of thoroughbred or standard bred and harness quarter horse racing where the parimutuel system is used." By the plain meaning of the definition, dog races are not "race meets" and consequently are not public nuisances within the scope of RCW 67.16.060 unless a pari-mutuel system is used.

gambling statute amendments, RCW 9.47.310(2) and (4). Consequently, without legislative intervention which would authorize pari-mutuel betting, the operation of a horse or dog track is neither practical nor feasible.

The horse racing act is a statutory exception to the professional antigambling law. *State v. Cross*, 22 Wn.2d 402, 156 P.2d 416 (1945). Under this act, certain identified breeds of horses, but by no means all, are permitted to race in conjunction with a pari-mutuel betting system. This pari-mutuel system is a type of betting pool, which, but for the provisions of the horse racing act, would violate RCW 9.47.310(2).

By the express language of RCW 67.16.060 the Horse Racing Commission also has the power "to exclude from any and all race courses of the state of Washington any person whom the commission deems detrimental to the best interests of racing . . ." The undisputed evidence in the record that horse and dog track operations must be conducted within the pari-mutuel system, coupled with a fair reading of the entire act in light of the professional gambling prohibition, convinces us that the horse racing act does much more than merely regulate legitimate business activity. The act creates conditions and provides a source of capital, but for which the horse racing industry could not flourish in this state.

The Kennel Association candidly admits that there can be neither a dog nor horse racing industry without the economic base provided by the pari-mutuel system. In order for any race track operator to obtain the benefits of a betting pool, however, the legislature must either repeal the professional gambling restrictions or create an exception, as it has done with respect to horse racing. Consequently, unless the professional antigambling law is in some way relaxed in its favor by the legislature, appellant cannot effectuate its purpose by simply having the horse racing act declared unconstitutional.

. We conclude that appellant has no right or interest which would be protected or enhanced by the relief sought

in this action. Even if successful in having the horse racing act declared unconstitutional, appellant would still have to apply to the legislature for authority to race dogs in conjunction with a pari-mutuel betting system. Consequently, this action presents no justiciable controversy.

■ Secondly, it is perfectly obvious that those persons who are presently licensed under the act would have their existing right to race horses in conjunction with pari-mutuel betting destroyed if the relief sought in this action were granted. Accordingly, it is our view that the present licensees under the horse racing act were indispensable parties to such a determination. As such, the failure to join them in the action was fatal on the question of justiciability and deprived the court of jurisdiction to hear and decide the issues raised. *See Parr v. Seattle,* 197 Wash. 53, 84 P.2d 375 (1938) and *see Chapin v. Collard,* 29 Wn.2d 788, 189 P.2d 642 (1948). 1 W. Anderson, *Actions for Declaratory Judgments* § 18 (2 ed. 1951). In recognition of this principle, RCW 7.24.110 provides, in part: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, . . ."

Furthermore, the statute expressly states that "no declaration shall prejudice the rights of persons not parties to the proceeding." If that provision is to have any meaning, then this suit is an exercise in futility and should have been dismissed for failure to join indispensable parties.

Lastly, the thrust of this action is to involve the courts in the question of the degree to which professional gambling activities will be permitted in this state. This thrust is demonstrated by appellant's prayer for relief. It is also demonstrated by its contention that there is no rational reason why pari-mutuel horse racing should be licensed and regulated while pari-mutuel dog racing should be absolutely suppressed, *i.e.,* the classic equal protection of laws argument.

■■ In *Tarver v. City Comm'n,* 72 Wn.2d 726, 435 P.2d 531 (1967), the court notes that the extent to which busi-

ness and occupational activities could be regulated or controlled by the state varied according to its classification as an (1) ordinary vocation pursued on private property by private means; (2) social or economic evil; or (3) extraordinary use of public property for private gain. Gambling was listed in the second category and the court noted at page 733 with respect to that entire class that, "All of these fall within the broad power of prohibition or suppression, some wholly and absolutely and others conditionally." *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 363, 186 P. 864 (1920); *Ex parte Dickey,* 76 W. Va. 576, 579, 85 S.E. 781 (1915). As noted above, the gambling statutes were amended in 1971 and the legislature at that time declared the public policy with respect to professional gambling in RCW 9.47.300:

It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, to preserve the freedom of the press and to avoid restricting participation by individuals in sports and social pastimes, which social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace.

The legislature hereby declares that the raising of funds for the promotion of bona fide charitable, educational, scientific, health, religious, civic and patriotic causes and undertakings is in the public interest and that it must differentiate clearly between gambling for profit and professional fund-raising by bona fide charitable and nonprofit organizations.

Pari-mutuel operations authorized by the horse racing act were specifically excluded from the definition of gambling. RCW 9.47.310(2). Thus, it is abundantly clear that the legislature intended to include pari-mutuel betting at other than licensed "race meets" in the second of the

*Tarver* categories of regulated activities and, furthermore intended that they be wholly suppressed. Considering the horse racing act together with the 1971 gambling amendments also makes clear that horse racing falls within the second of the *Tarver* categories, but that it is only conditionally suppressed.

■ If the court were to rule that the horse racing act was unconstitutional on an equal protection basis, because it did not allow professional gambling on dog races, the judiciary would be determining what is primarily a political question in an area of almost complete legislative discretion and in an area vitally affecting public safety and morals. *See Baker v. Carr*, 369 U.S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962). In our view, appellant's complaint does not raise a controversy involving the equal protection of the law, but instead raises a legislative policy question concerning how wide the door should be opened to professional gambling. *See Baker v. Carr, supra.* That question is not for the courts and is not justiciable.

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied March 12, 1973.

Review denied by Supreme Court May 1, 1973.