[No. 2687–2.   Division Two.   April 20, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. CATALINO SARASAD GEDARRO, *Appellant.*

*Jeffrey F. Hale,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Michael McNerthney, Deputy,* for respondent.

PETRIE, J.—Catalino S. Gedarro was convicted of two counts of professional gambling (RCW 9.46.220) committed on August 13 and 20, 1976, and two counts of gambling without a license (RCW 9.46.160) committed on the same two dates.

On appeal he challenges certain operative sections of the gambling act as violative of the privileges and immunities clause, article 1, section 12 of the Constitution of the State of Washington, and the fourteenth amendment to the United States Constitution which guarantees due process and equal protection under the law. We affirm the judgment and sentence.

Mr. Gedarro's arrest and subsequent conviction derived from a series of card games conducted at a Pierce County residence in August 1976. Investigator Lazares, an undercover policeman, testified that on two separate dates in August he was admitted to the premises and played draw poker with various individuals, including the defendant. On both occasions defendant acted as the cashier, exchanging currency for chips, and supplied fresh cards to the players when necessary. At the conclusion of each hand defendant removed a particular number of chips from the total amount of the wagered stakes and distributed the remainder to the winner. Defendant testified that the chips removed from the pot represented "donations" from the players, portions of which were used to support The Friends of Humanity, a nonprofit charitable organization duly registered with the Secretary of State. Nevertheless, Mr. Gedarro was neither an officer, director, nor agent of The Friends of Humanity; nor was he licensed to conduct any gambling activity. Additionally, the card game was neither licensed nor conducted under the corporation's auspices. Consequently, the defendant does not seek the protection of RCW 9.46.030 which provides in pertinent part:

(1) The legislature hereby authorizes bona fide charitable or nonprofit organizations to conduct bingo games, raffles, amusement games, to utilize punch boards and pull-tabs and to allow their premises and facilities to be used by members and guests only to play social card games authorized by the commission, when licensed, conducted or operated pursuant to the provisions of this chapter and rules and regulations adopted pursuant thereto.

. . .
(4) The legislature hereby authorizes any person, association or organization to conduct social card games and to utilize punch boards and pull–tabs as a commercial stimulant when licensed and utilized or operated pursuant to the provisions of this chapter and rules and regulations adopted pursuant thereto.

■ Defendant asserts, however, that the provisions of this section create an arbitrary classification violative of equal protection because no reasonable distinction exists between charitable, nonprofit organizations and individuals conducting gambling activities, other than as a commercial stimulant. We disagree. Social or economic evils, such as gambling, and other activities which jeopardize the public health and safety, are subject to the legislature's prohibition, some absolute and others conditional. *Tarver v. City Comm'n,* 72 Wn.2d 726, 731–33, 435 P.2d 531 (1967).

Proscriptions imposed upon gambling activity are entirely within the legislative domain and are essentially immune from judicial interpretation. *Northwest Greyhound Kennel Ass'n, Inc. v. State,* 8 Wn. App. 314, 506 P.2d 878 (1973). Consequently, any approved gambling activity is a legislative privilege and not an inherent right. *In re Destruction of One Gambling Device,* 16 Wn. App. 859, 559 P.2d 1003 (1977). If this court were to declare the gambling act unconstitutional on an equal protection basis, we would be injecting the judiciary in matters traditionally left to legislative policy making. *Northwest Greyhound Kennel Ass'n, Inc. v. State, supra.* We believe that defendant's challenge does not reach the issue whether the statute impedes equal protection of the law; rather it raises a political question and it not justiciable. However, if we were to meet defendant's challenge on the merits our result would not differ. If we assume that gambling is a business not so completely fraught with social evils permitting almost unfettered legislative regulation, then its regulation may nevertheless be proscribed so long as the basis for the

proscription has a reasonable relationship to the regulated activity. *Tarver v. City Comm'n, supra.*

Underlying the gambling act, and consonant with the legislative recognition that professional gambling is interrelated with organized crime, are policies which attempt to restrain personal profits realized through professional gambling activities and to discourage participation in such activities. RCW 9.46.030 is consistent with the State's interest to suppress moral decay and criminal propensities that accompany professional gambling because (1) it permits the public to engage only in pastimes that tend more toward amusement than profit, and (2) it promotes the public interest in supporting charitable activities, thus differentiating between gambling for profit and professional fund raising by a bona fide charitable organization. The statutory regulations afford the State an opportunity to scrutinize the activities of the charitable organizations and licensed individuals to ensure their eligibility pursuant to the statutory scheme. Thus, even if defendant's complaint does raise a justiciable controversy, the statutory regulations express and define the State's interest in preserving the public morals through classifications reasonably related to the regulated activity and cannot be said to violate equal protection of the law.

Defendant next contends that his conviction for professional gambling (RCW 9.46.220) must be reversed because his allegedly illegal activity was based upon an unconstitutionally vague statutory definition. He alleges that a "player," as defined in RCW 9.46.020(14),[1] is authorized to perform activities constituting "professional gambling"

---

[1] RCW 9.46.020(14) provides:

"'Player' means a natural person who engages, on equal terms with the other participants, and solely as a contestant or bettor, in any form of gambling in which no person may receive or become entitled to receive any profit therefrom other than personal gambling winnings, and without otherwise rendering any material assistance to the establishment, conduct or operation of a particular gambling activity. A natural person who gambles at a social game of chance on equal terms with the other participants therein does not otherwise render material assistance to the establishment, conduct or operation thereof by performing,

(RCW 9.46.020(15)),[2] so that a person of common intelligence and understanding would not know whether certain conduct is proscribed as professional gambling or is authorized as player activity.

█ The concept of "void for vagueness" derives from the constitutional due process requirement of fair notice and intelligible statutory standards to prevent arbitrary and discriminatory enforcement by police and inconsistent applications by judges and juries. *Papachristou v. Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972); *State v. Carter*, 89 Wn.2d 236, 570 P.2d 1218 (1977).

█ We do not agree with defendant that the statutory criteria of professional gambling set forth in RCW 9.46.020(15) is too vague to meet constitutional standards. The statute clearly provides persons of ordinary intelligence and understanding with fair notice and ascertainable standards of the conduct sought to be proscribed.

without fee or remuneration, acts directed toward the arrangement or facilitation of the game, such as inviting persons to play, permitting the use of premises therefor, and supplying cards or other equipment used therein. A person who engages in 'bookmaking' as defined in this section is not a 'player'."

[2]RCW 9.46.020(15) provides in pertinent part:

"A person is engaged in 'professional gambling' when:

"(a) Acting other than as a player or in the manner set forth in RCW 9.46.030 [authorizing, *inter alia*, members and guests of bona fide charitable or nonprofit organizations to conduct social card games authorized by the gambling commission, when licensed] as now or hereafter amended, he knowingly engages in conduct which materially aids any other form of gambling activity; or

"(b) Acting other than as a player, or in the manner set forth in RCW 9.46.030 as now or hereafter amended, he knowingly accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of gambling activity;

". . .

"Conduct under subparagraph (a), except as exempted under RCW 9.46.030 as now or hereafter amended, includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation."

The definition of professional gambling clearly focuses on whether a person has received money, other than personal gambling winnings, pursuant to an agreement to partake in the gambling process, or whether he has provided "material assistance" to the establishment, conduct, or operation of a particular gambling activity. RCW 9.46.020(14) delineates what is not material assistance, emphasizing that the absence of compensable assistance to the game is essential to player status. In the case at bench, defendant testified that he paid his rent and bought his food and clothing from the "donations." Indeed, he also testified that the donations provided "my survival." Therefore, by accepting money for facilitating the card game, defendant's conduct unquestionably involved professional gambling.

Defendant also argues that a charge of gambling without a license mutually excludes a charge, arising from the same transaction, of professional gambling because a professional gambler is statutorily barred from obtaining a gambling license. We cannot accept defendant's premise, however, because professional gamblers are required to be licensed to conduct card games. RCW 9.46.030(4). Professional gambling requires elements distinct from merely conducting a gambling activity without a license. RCW 9.46.020(15). Therefore, although both violations arose from the same transaction, the evidence required for a conviction of professional gambling will not support a conviction for gambling without a license. Accordingly, they are not mutually exclusive. *State v. Morlock,* 87 Wn.2d 767, 557 P.2d 1315 (1976).

Finally, defendant claims that the court's discretion to selectively enforce the civil injunction provided by RCW 9.46.150 or the criminal sanctions of RCW 9.46.160 denies him due process of law. However, the authorization of gambling is a legitimate exercise of the State's police power, *In re Destruction of One Gambling Device, supra;* and any unauthorized gambling activity is a nuisance per se that may be enjoined even though there exists the legal remedy

of arrest and punishment. *State v. Boren,* 42 Wn.2d 155, 253 P.2d 939 (1953).

Judgment affirmed.

PEARSON, C.J., and SOULE, J., concur.

Reconsideration denied May 11, 1978.

Review denied by Supreme Court October 20, 1978.