[No. 46186–8761–4–I.   Division One.   November 24, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v.
WILLIAM JAMES LANGFORD, *Appellant.*

*Barry & Barnhart, Inc., P.S.,* and *Fred Barnhart,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dennis Nollette* and *Timothy Sullivan, Deputies,* for respondent.

ANDERSEN, J.—
## FACTS OF CASE
The defendant, William James Langford, appeals from his conviction of professional gambling (RCW 9.46-.020(17)(a) and (d) and RCW 9.46.220) and from a deferred sentence.

The defendant, who was tending bar in a restaurant bar at the time, was charged with conducting a lottery and

engaging in gambling not allowed by RCW 9.46.020. This was after police observed him and others playing a game called "quarters."

"Quarters" is a game in which a participant places a bet with the "banker" on whether the second quarter in a stack of quarters will have a head or a tail facing up when the top coin is removed. If the player wins, he collects his bet from the banker. If the player loses, the player pays the banker the amount of the bet. The banker then proceeds to the next player who places a bet and so on. After each player has had an opportunity to bet, the banker may retire and another player may become the banker.

The defendant was convicted in a trial to the court on stipulated facts.

Three issues are presented by this appeal.

## ISSUES

ISSUE ONE. Is the game of "quarters," as described in the stipulation, a lottery within the prohibition of the 1973 gambling act, RCW 9.46?

ISSUE TWO. Was the defendant's conduct within the so-called "player exception" of the 1973 gambling act?

ISSUE THREE. Is the definition of a lottery in the 1973 gambling act unconstitutionally vague?

## DECISION

CONCLUSION. We answer the question posed by the first issue in the affirmative and the questions posed by the second and third issues in the negative. The trial court did not err in convicting the defendant of professional gambling.

This state's comprehensive 1973 gambling act, RCW 9.46, covers the entire field of gambling. Therefore, we must look to the statute in order to resolve the issues presented. *See State ex rel. Schillberg v. Barnett,* 79 Wn.2d 578, 583, 488 P.2d 255 (1971).

"Lottery" is presently defined by statute:

"Lottery" means a scheme for the distribution of money or property by chance, among persons who have

paid or agreed to pay a valuable consideration for the chance.

RCW 9.46.020(14) (part).[1]

Under this definition, a lottery has three elements:

(a) a scheme for the distribution of money or property;
(b) by chance; and
(c) among persons who have paid or agreed to pay a valuable consideration for the chance. (Consideration is subject to certain statutory exclusions not pertinent here).

█ The three elements of a lottery are satisfied in this case by the following:

(1) the purpose of the game was to award a prize, namely money to the winner;

(2) the uncovering of the winning coin face was a matter of pure chance; there is no skill or judgment involved in selecting a head or a tail on a concealed coin face; and

(3) the bettor's promise to pay money if he or she loses constitutes the consideration for the chance; "[i]f the consideration is sufficient to sustain a simple contract (if otherwise legal), it is sufficient to constitute an element of lottery." 38 Am. Jur. 2d *Gambling* § 7, at 114 (1968). The scheme is "among persons" since two people, the player and the banker, constitute the plural "persons" whether or not we consider that under the stipulated facts additional "persons" were also involved in the game.

Thus the game of "quarters" as described in the stipulation does constitute a "lottery" as defined in RCW 9.46-.020(14).

Additionally, the defendant was engaged in "professional gambling" when he conducted the lottery. The player exception described in RCW 9.46.020(16) is not applied to lotteries by RCW 9.46.020(17)(d). As the trial court correctly observed,

---

[1]Subsequent to the enactment of RCW 9.46.020, some changes in the numbering of the subsections have been made. The subsection numbers used herein are current as of the date of this opinion.

every person had a choice whether they wanted to be a banker. At the time they took the bank in front of them, they became a professional gambler under that statute and there is no player exception for that person.

The final issue raised by the defendant is his claim that the statute is unconstitutionally vague. One who challenges the constitutionality of a statute carries the heavy burden of demonstrating its invalidity beyond a reasonable doubt. *Bellevue v. State,* 92 Wn.2d 717, 720, 600 P.2d 1268 (1979). "An act of the legislature is presumed to be constitutional and valid and ought not be declared invalid unless it appears to be so beyond a reasonable doubt." *State v. Primeau,* 70 Wn.2d 109, 111, 422 P.2d 302 (1966).

We have carefully considered the defendant's constitutional arguments. We are satisfied that the 1973 gambling act read as a whole provides persons of ordinary intelligence with fair notice and ascertainable standards of the conduct sought to be proscribed and therefore is not unconstitutionally vague. *State v. Carter,* 89 Wn.2d 236, 239–40, 570 P.2d 1218 (1977). *See also State v. Gedarro,* 19 Wn. App. 826, 831–32, 579 P.2d 949 (1978).

The definition of lottery has three elements which must be shown to exist. The game of "quarters" possesses all of those elements and fairly comes within the statutory definition of the offense charged. The fact that the defendant did not anticipate that the game of "quarters" could be proscribed as a lottery does not render the statute vague. It provides fair notice of the activity which is prohibited.

Affirmed.

SWANSON and WILLIAMS, JJ., concur.