242 P.3d 891 (2010)
NORTHWEST ANIMAL RIGHTS NETWORK, corporate taxpayer of Washington State and King County, and on behalf of all similarly situated Taxpayers of Washington State and King County; Rachel Bjork, individual taxpayer of King County and Washington State, and on behalf of all similarly situated Taxpayers of Washington State and King County, Appellants,
v.
STATE of Washington and King County, Respondents.
No. 64415-7-I.
Court of Appeals of Washington, Division 1.
October 25, 2010.
Reconsideration Denied November 30, 2010.
*892 Adam Phillip Karp, Animal Law Offices, Bellingham, WA, for Appellants.
Nancy Anne Balin, Office of Prosecuting Attorney, Seattle, WA, for Respondent King County.
Kristen Kay Mitchell, Dorothy Harris Jaffe, Attorney General's Office, Olympia, WA, for Respondent State of Washington.
DWYER, C.J.
¶ 1 Northwest Animal Rights Network and one of its members, Rachel Bjork, contend that portions of our state's animal cruelty legislation, chapter 16.52 RCW, are unconstitutional. The superior court dismissed the action for several reasons, including that the claim was not justiciable. We agree that the case does not present a justiciable controversy. Accordingly, we affirm.

I
¶ 2 The Prevention of Cruelty to Animals legislation, chapter 16.52 RCW, criminalizes conduct that constitutes animal cruelty. It addresses both the type of conduct that is prohibited and the type of conduct that is permitted. See, e.g., RCW 16.52.080-.117; RCW 16.52.180, .185. Certain activities, including commercial food production, rodeo and fair events, veterinary practices, and university research, are explicitly not criminalized under the statute. RCW 16.52.185,.205(6).
¶ 3 Northwest Animal Rights Network and Rachel Bjork (together "the Network") filed a complaint against the State of Washington and King County. Subsequently, the Network amended the complaint and properly served it upon the defendants. The amended complaint requests injunctive and declaratory relief. The Network asserts that several provisions of chapter 16.52 RCWeach of which establishes that particular activities or practices do not constitute criminal animal crueltyare unconstitutional because they violate "the nondelegation doctrine, Article I, Section X, and the Fifth, and Fourteenth Amendments to the United States Constitution; and Article 1, Sections 12 and 23 of the Washington State Constitution."[1] The relief *893 sought by the Network was to have the various sections excluding these practices from condemnation as criminal stricken, thusby judicial fiatcriminalizing these practices and activities.
¶ 4 Both the state and the county answered, raising several affirmative defenses. The Network then moved to amend its complaint a second time. The second amended complaint includes allegations that the challenged exemptions "cause, or allow to be caused, otherwise criminal activity in the form of animal abuse, neglect, and cruelty," which results in "aesthetic, emotional, and/or financial injury" to the Network and the Network's members because they "come into contact directly or indirectly" with such activity. The second amended complaint also purports to include allegations of "specific government acts challenged as being illegal, invalid, and unconstitutional." These specific government acts include the state legislature's passage of chapter 16.52 RCW and also the "selective (non)enforcement" of chapter 16.52 RCW by the Washington State Patrol, the King County Sheriff's Office, the Attorney General, the King County Prosecuting Attorney, and all state trial judges.
¶ 5 The state and the county moved for judgment on the pleadings pursuant to CR 12(c), asserting several grounds for dismissal. The trial court granted the motion, concluding that the Network failed to plead a justiciable claim.[2] The trial court also denied the Network's motion to amend its complaint because "the proposed amendments will not cure the legal deficiencies identified in this order."[3] The Network then moved for reconsideration, which the trial court denied.
¶ 6 The Network appeals.

II
¶ 7 A trial court's dismissal of a claim pursuant to CR 12(c)[4] is reviewed de novo. Parrilla v. King County, 138 Wash. App. 427, 431, 157 P.3d 879 (2007). We examine the pleadings to determine whether the plaintiff can prove any set of facts consistent with the complaint that would entitle the plaintiff to relief. N. Coast Enters., Inc. v. Factoria P'ship, 94 Wash.App. 855, 859, 974 P.2d 1257 (1999). The factual allegations contained in the complaint are accepted as true. N. Coast Enters., 94 Wash.App. at 859, 974 P.2d 1257 (quoting Roth v. Bell, 24 Wash. App. 92, 94, 600 P.2d 602 (1979)).

III
¶ 8 The Network contends that the trial court erred by concluding that the Network failed to plead a justiciable claim. We disagree.
¶ 9 "A challenge to the constitutionality of a statute by means of a declaratory judgment must be justiciable before it will be considered." Snohomish County v. Anderson, 124 Wash.2d 834, 840, 881 P.2d 240 (1994); see also Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 814-15, 514 P.2d 137 (1973).[5]
*894 ¶ 10 It has previously been held that a claim is not justiciable where the plaintiff fails to join indispensible parties and where the case presents a political question not appropriate for the judiciary to resolve. Nw. Greyhound Kennel Ass'n, Inc. v. State, 8 Wash.App. 314, 318-19, 506 P.2d 878 (1973). The plaintiffs in Northwest Greyhound challenged the constitutionality of the Horse Racing Act, chapter 67.16 RCW. 8 Wash. App. at 318, 506 P.2d 878. The court therein determined that the plaintiff's failure to join indispensible parties rendered the case not justiciable:
[I]t is perfectly obvious that those persons who are presently licensed under the act would have their existing right to race horses in conjunction with pari-mutuel betting destroyed if the relief sought in this action were granted. Accordingly, it is our view that the present licensees under the horse racing act were indispensable parties to such a determination. As such, the failure to join them in the action was fatal on the question of justiciability and deprived the court of jurisdiction to hear and decide the issues raised.

Nw. Greyhound, 8 Wash.App. at 319, 506 P.2d 878 (emphasis added) (citing Chapin v. Collard, 29 Wash.2d 788, 189 P.2d 642 (1948); Parr v. Seattle, 197 Wash. 53, 84 P.2d 375 (1938); 1 W. ANDERSON, ACTIONS FOR DECLARATORY JUDGMENTS, § 18 (2d ed.1951)). The court found support for its holding in the legislature's determination that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." RCW 7.24.110.
[T]he statute expressly states that "no declaration shall prejudice the rights of persons not parties to the proceeding." If that provision is to have any meaning, then this suit is an exercise in futility and should have been dismissed for failure to join indispensable parties.
Nw. Greyhound, 8 Wash.App. at 319, 506 P.2d 878.
¶ 11 The court additionally held that the plaintiff's claims were not justiciable because they presented a political question.
[T]he thrust of this action is to involve the courts in the question of the degree to which professional gambling activities will be permitted in this state. This thrust is demonstrated by appellant's prayer for relief.
....
If the court were to rule that the horse racing act was unconstitutional on an equal protection basis, because it did not allow professional gambling on dog races, the judiciary would be determining what is primarily a political question in an area of almost complete legislative discretion and in an area vitally affecting public safety and morals. In our view, appellant's complaint does not raise a controversy involving the equal protection of the law, but instead raises a legislative policy question concerning how wide the door should be opened to professional gambling. That question is not for the courts and is not justiciable.

Nw. Greyhound, 8 Wash.App. at 319, 506 P.2d 878 (emphasis added) (citations omitted) (citing Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)); see also State v. Gedarro, 19 Wash.App. 826, 829, 579 P.2d 949 (1978) ("We believe that defendant's challenge does not reach the issue whether the [Gambling Act] impedes equal protection of the law; rather it raises a political question and is not justiciable.").
¶ 12 The same is true in this case. The Network seeks to have us declare unconstitutional those provisions of chapter 16.52 RCW that exempt certain activities from the application of the statute. The challenged provisions effectively provide that the chapter *895 does not criminalize "accepted husbandry practices used in the commercial raising or slaughtering of livestock or poultry, or products thereof," "the use of animals in the normal and usual course of rodeo events," "the customary use or exhibiting of animals in normal and usual events at fairs," "accepted veterinary medical practices by a licensed veterinarian or certified veterinary technician," hunting and fishing activities, or scientific and medical research performed by colleges, universities, and federally-registered research facilities. See RCW 16.52.095, .180,.185, .205(6). In other words, the challenged provisions of the statute establish that persons engaging in particular activities and practices are not committing criminal animal cruelty.
¶ 13 As with the plaintiffs in Northwest Greyhound, the Network, in bringing its claim, has failed to join indispensable parties. Specifically, the Network failed to join any of those parties whose rights and interests would be affected by the declaratory relief that the Network seeks, including Washington's beef ranchers, rodeo riders, 4-H members, veterinarians, recreational fishermen, and university researchers.[6] It is perfectly evident that those persons whose occupations and recreational activities are presently free from condemnation as criminal pursuant to the act would have their existing right to engage in these occupations and recreational activities destroyed if the relief sought in this action were granted.
¶ 14 In addition, the Network's complaint raises a legislative policy question concerning what actions should be criminalized. That question is not for the courts. See Nw. Greyhound, 8 Wash.App. at 321, 506 P.2d 878. Indeed, "[i]t is the role of the legislature, not the judiciary, to balance public policy interests and enact law." Rousso v. State, ___ Wash.2d ___, ___, 239 P.3d 1084 (2010). "Article 2, section 1, of the Washington State Constitution vests all legislative authority in the legislature and in the people," through the power of initiative and referendum. In re Chi-Dooh Li, 79 Wash.2d 561, 577, 488 P.2d 259 (1971); see CONST. art. II, § 1. Specifically, it is the function and responsibility of the legislature to define crimes. State v. Ermert, 94 Wash.2d 839, 847, 621 P.2d 121 (1980) ("The determination of crimes and punishment is a legislative function subject to only limited review in the courts."); State v. Torres Ramos, 149 Wash. App. 266, 271, 202 P.3d 383 (2009) ("Authority to define crimes and set punishments rests firmly with the legislature.").
¶ 15 Our legislature has determined that certain common and customary activities involving animals are not abhorrent to our society. We have no authority to conduct our own balancing of the pros and cons stemming from the criminalization of various activities involving animals because "[i]t is not the role of the judiciary to second-guess the wisdom of the legislature." Rousso, ___ Wash.2d at ___, ___, 239 P.3d 1084; see also Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 470, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) ("[I]t is not the function of the courts to substitute their evaluation of legislative facts for that of the legislature."); Ferguson v. Skrupa, 372 U.S. 726, 729, 83 S.Ct. *896 1028, 10 L.Ed.2d 93 (1963) ("Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation."). The courts are not in a position to agree or disagree with our legislature's balancing of public policy interests or its determination as to which animals will be protected and in what manner this protection will be afforded. See Rousso, ___ Wash.2d at ___, 239 P.3d 1084.
Indeed, the judiciary's making such public policy decisions would not only ignore the separation of powers, but would stretch the practical limits of the judiciary. See Brown v. Owen, 165 Wash.2d 706, 718-19, 206 P.3d 310 (2009) (recognizing the separation of powers implicit in the Washington Constitution and the relevance of justiciability concerns like those addressed by the federal political question doctrine) (citing Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). This court is not equipped to legislate what constitutes a "successful" regulatory scheme by balancing public policy concerns, nor can we determine which risks are acceptable and which are not. These are not questions of law; we lack the tools. [The plaintiff], "in order to succeed in this action, ask[s] the Court to enter upon policy determinations for which judicially manageable standards are lacking." Baker, 369 U.S. at 226, 82 S.Ct. 691. Such is beyond the authority and ability of the judiciary.
Rousso, ___ Wash.2d at ___, 239 P.3d 1084 (second alteration in original).
¶ 16 Here, the legislature balanced public policy concerns and determined that the interests of the state and its citizenry are best served by preventing particular types of harm against animals without infringing on certain occupations, professions, and activities deemed important by the legislature. "Many may disagree with the outcome. But the court has no authority to replace the legislature's choice with its own." Rousso, ___ Wash.2d at ___, 239 P.3d 1084. While many of the activities that remain lawful as a result of the exclusions included within chapter 16.52 RCW may dismay the Network and its members, the legislative forum and power of initiative[7] are available to them to express their dissatisfaction.
¶ 17 The Network failed to join indispensible parties and the Network's claim raises a political question. Therefore, the Network has not presented a justiciable controversy.[8] The trial court did not err by ordering dismissal.[9]

IV
¶ 18 The Network also contends that the trial court erred by denying the Network's motion to amend its complaint a second time. We disagree.
¶ 19 The decision to grant or deny leave to amend pleadings is reserved to the discretion of the trial court. Wilson v. *897 Horsley, 137 Wash.2d 500, 505, 974 P.2d 316 (1999). The denial of a motion for leave to amend does not constitute an abuse of discretion if the proposed amendment was futile. Rodriguez v. Loudeye Corp., 144 Wash.App. 709, 729, 189 P.3d 168 (2008). Here, the additional allegations contained in the Network's second amended complaint would not cure the above-identified justiciability defects. Thus, the Network's amendment was futile. Rodriguez, 144 Wash.App. at 730, 189 P.3d 168. Accordingly, the trial court did not abuse its discretion by denying the amendment.
¶ 20 Because the Network's claim is not justiciable, we need not reach the other issues briefed by the parties.[10]
¶ 21 Affirmed.
We concur: LAU and SCHINDLER, JJ.
NOTES
[1] Article I, section 12 of the Washington State Constitution provides: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

Article I, section 23 provides: "No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed."
[2] The trial court also concluded that the Network did not meet the standing requirements of the Uniform Declaratory Judgments Act, chapter 7.24 RCW, that the Network did not have taxpayer standing, and that the trial court lacked subject matter jurisdiction over the Network's claims "due to lack of standing and lack of justiciable controversy."
[3] The Network had earlier moved to strike the affirmative defenses raised by the state and the county. This motion was denied in the order granting the state's and county's motion for judgment on the pleadings.
[4] CR 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.
[5] The Network suggests that it has presented a matter of major public importance for which justiciability requirements are relaxed. In State ex rel. Distilled Spirits Institute, Inc. v. Kinnear, 80 Wash.2d 175, 178, 492 P.2d 1012 (1972), our Supreme Court held that courts may decide a question of public interest that has been adequately briefed and argued if doing so would benefit the public and government officers. Even were we to characterize the questions posed herein as being of major public importance, a finding we do not make, the parties' briefing and the inadequate appellate record presented render inapplicable this approach to the justiciability requirement.
[6] The Network contends that, in bringing its claims herein, it should not be constrained by the Uniform Declaratory Judgments Act's requirement to join all affected persons, RCW 7.24.110, because such a requirement must be subject to reasonable limitations, otherwise "the valuable remedy of declaratory judgment would be rendered impractical and indeed often worthless for determining the validity of legislative enactments, either state or local, since such enactments commonly affect the interests of large numbers of people." City of Philadelphia v. Commonwealth, 575 Pa. 542, 569, 838 A.2d 566, 583 (2003). However, in the authorities cited by the Network, the reasonable limitation is that "[w]here the parties ... who would be affected by a judgment, are so numerous that it would be impracticable to bring them all before the court, it has been held or recognized that the provisions of § 11 of the Uniform Declaratory Judgments Act will not preclude the bringing of a declaratory judgment action as a class action in which the parties appear by representation." Annotation, Construction, application, and effect of § 11 of the Uniform Declaratory Judgments Act that all persons who have or claim any interest which would be affected by the declaration shall be made parties, 71 A.L.R.2d 723 § 6, at 735 (1960). Here, the particular interests of the above-described indispensible parties are not represented in any way. Furthermore, the "class action solution" discussed in the above-cited annotation could only apply to missing plaintiffs. Here, the missing necessary parties would be defendants.
[7] "The first power reserved by the people is the initiative." Const. art. II, § 1(a).
[8] We recognize that a justiciable controversy has been defined as

(1) ... an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.
Diversified Indus., 82 Wash.2d at 815, 514 P.2d 137; State ex. rel O'Connell v. Dubuque, 68 Wash.2d 553, 558, 413 P.2d 972 (1966). However, we need not determine whether these four elements are met because the Network has failed to meet other threshold requirements for a claim to be justiciable: indispensable persons must be joined as parties and the claim presented cannot raise a political question. Nw. Greyhound, 8 Wash.App. at 321, 506 P.2d 878.
[9] The Network errs in contending that it brought two causes of action: a request for a declaratory judgment action pursuant to the Uniform Declaratory Judgments Act and a request for a declaratory judgment pursuant to a "taxpayer action." Our Supreme Court has recognized different means of establishing standing in a declaratory judgment action: pursuant to the act or as a taxpayer. See Federal Way Sch. Dist. No. 210 v. State, 167 Wash.2d 514, 528-30, 219 P.3d 941 (2009). The two means of establishing standing do not equate to there being two different causes of action. All requests for a declaratory judgment are governed by the Uniform Declaratory Judgments Act.
[10] The Network is not entitled to an award of attorney fees on appeal. First, it is an unsuccessful party. Second, although the Network requests an award of attorney fees on appeal pursuant to RAP 18.1 "on the equitable basis that [the Network is] conferring a substantial benefit to an ascertainable class ... as private attorneys general," Appellant's Br. at 49, "[t]he private attorney general doctrine does not apply in Washington." Blue Sky Advocates v. State, 107 Wash.2d 112, 122, 727 P.2d 644 (1986). Therefore, the Network's claimed status as private attorneys general provides no basis to award attorney fees. Finally, the Network did not properly move to amend its appellate briefing in order for us to consider its additional arguments regarding attorney fees.